BLOSSOM OIL & COTTON COMPANY v. GRACIE POTEET.

No. 2158.    Decided April 19, 1911.

**Negligence—Dangerous Machinery—Injury to Child—Master and Servant—Parent and Child.**

A child 4½ years old was taken by her mother to the seed room of a cotton oil mill, carrying his luncheon to the father who was an employee of the mill company, the only one then in the room. The mother took the father's place in shoveling seed into a seed conveyor, while the child, who had been playing about the room, joined the father in eating his meal. The pile of cotton seed falling down upon the mother, the father ran to her assistance, and the child, following him, stepped into the conveyor and was mangled by the machinery, suffering loss of a leg. The father had not been authorized, but forbidden to permit the child's presence there. Held:

(1)    She being, at most, but a licensee there, the company owed the child no duty with reference to the safe condition of its machinery.

(2)    Being taken there by her parents, not attracted to the spot by what was there, the rule as to the precautions to be taken as to dangerous machinery attractive to children had no application.

(3)    It was immaterial that she had been permitted to play about the room, since that was not the cause of her injury.

(4)    The rule requiring care and watchfulness by the proprietor of dangerous machinery to prevent injury to children seen upon his premises, rests on their inability to protect themselves and the absence of their lawful protectors; it was inapplicable where the child was accompanied by its parents.

(5)    The fact that the person whose failure to care for the safety of the child was a servant of defendant, would not make the latter liable for his neglect when he was also her father and natural protector. The company could rely on the presence and care of the parent as such, though he was also its servant; and his duty as employee could not be separated from that as father for the purpose of establishing liability of his employer.

(6)    Under the undisputed facts the injured child was not entitled to recover damages from the proprietor of the premises.    (Pp. 232-237.)

Error to the Court of Civil Appeals, Sixth District, in an appeal from Lamar County.

Gracie Poteet, by next friend, sued the oil company and had judgment. Defendant appealed, and on affirmance obtained writ of error. The case on appeal is reported in 60 Texas Civ. App., 327. On a previous trial a demurrer to plaintiff's petition was sustained, but this ruling was reversed on appeal. Poteet v. Blossom Oil & C. Co., 115 S. W., 289.

*Moore & Park,* for plaintiff in error.—There being no evidence that plaintiff entered or was carried into the seed room of defendant at the special instance and request of any of the employees of defendant authorized to give consent by their agency, it was error to submit such issue, although the pleadings presented the issue. Railway Co. v. McCoy, 90 Texas, 264; Railway Co. v. Roland, 90 Texas, 365; Railway Co. v. Gilmore, 62 Texas, 391; Railway Co. v. Wisenor, 66 Texas, 674; Andrews v. Smithwick, 20 Texas, 111; Wood v. Texas Cotton Produce Co., 88 S. W., 496; Railway Co. v. Warner, 88 Texas, 647.

The law imposes no duty upon the defendant to use care to keep his property in such condition that children going therein without

his invitation may not be injured.    Dobbins v. Missouri, K. & T. Ry.
Co., 91 Texas, 60; Railway Co. v. Edwards, 90 Texas, 65; North
Texas Construction Co. v. Bostic, 98 Texas, 239; Isbell v. Haywood
L. Co., 47 Texas Civ. App., 345; International & G. N. Ry. Co. v.
Vallejo, 102 Texas, 70; Wheeling Ry. Co. v. Harvey, 122 Am. St.,
503; Williamson v. Gulf, C. & S. F. Ry. Co., 88 S. W., 274.

The defendant was under no obligation to keep watch over its
premises, in order to exclude children therefrom; and was under no
obligation to construct and maintain its seed room or the machinery
therein in a safe condition for Gracie Poteet to play therein.    Rail-
way Co. v. Edwards, 90 Texas, 65.

If B. F. Poteet had no authority to permit Gracie to enter or
remain in said seed room, she could not recover on the ground that
she was invited or permitted to enter and remain in said seed room
by authority of the agents of defendant.    Oil Co. v. Martin, 70 Texas,
400; Cook v. Houston D. Nav. Co., 76 Texas, 357; West v. Poor,
124 Am. St., 541; Foster Herbert Stone Co. v. Pugh, 112 Am. St.,
881; Branch v. International & G. N. Ry. Co., 92 Texas, 288; Interna-
tional & G. N. Ry. Co. v. Cooper, 88 Texas, 60; International & G. N.
Ry. Co. v. Anderson, 82 Texas, 517-520.

If the sole and only cause of the injury sustained by plaintiff
was the negligence of B. F. Poteet, the father of plaintiff, and her
mother, or either of them, then she could not recover.    St. Louis
S. W. Ry. v. Byers, 70 S. W., 558; The Burgundia, 29 Fed., 464.

*Wright & Patrick* and *Burdett & Connor,* for defendant in error.—
Appellee was not a trespasser on the premises of appellant, and ap-
pellant owed her the duty of using proper care to protect her from
injury by its dangerous and exposed machinery while she remained
there.    Texas, etc., R. Co. v. O'Donnell, 58 Texas, 44; Dallas, etc.,
Ry. v. Dunlap, 7 Texas Civ. App., 474; Texas Trunk R. R. v. John-
son, 75 Texas, 161; Dillingham v. Russell, 73 Texas, 47; Dublin
Cotton Oil Co. v. Jarrard, 40 S. W. Rep., 531, 91 Texas, 289;
Union P. Ry. v. McDonald, 152 U. S., 260; Texas & P. Ry. Co. v.
Fletcher, 6 Texas Civ. App., 738; Cook v. Navigation Co., 76 Texas,
358; St. Louis S. W. Ry. Co. of Texas v. Davis, 110 S. W., 939;
Galveston, H. & N. Ry. Co. v. Olds, 112 S. W., 786; Ft. Worth & D.
C. Ry. Co. v. Poteet, 53 Texas Civ. App., 44; Poteet v. Blossom
Cotton Oil Co., 53 Texas Civ. App., 187; Neff v. Cameron, 18 L.
R. A. (N. S.), 320; Texas & P. Ry. Co. v. Beckworth, 32 S. W.,
809; Houston City St. Ry. Co. v. Rickart, 27 S. W., 918.

Even if plaintiff was a trespasser, when the employee of the de-
fendant in charge and control of its seed room saw her and knew
she was there in close proximity to the seed conveyor, it became his
duty, as the agent of the defendant, to take steps for her protection
by warning her of her danger and removing her from the seed room
where said conveyor was in operation, notwithstanding the fact that
such employee was the father of plaintiff.    North Texas Const. Co.
v. Bostick, 98 Texas, 241; St. Louis S. W. Ry. Co. v. Davis, 110 S.
W., 939; Siddall v. Jansen, 39 L. R. A., 112, and authorities there
cited.

If the act of the mother of plaintiff in carrying her into the seed room was negligence, and if her father in permitting her to be brought there and to remain there was negligent, such negligence on the part of the father and mother can not be imputed to plaintiff, and she can not be deprived of her property right, the right of action against the defendant, by the negligent or wrongful acts and conduct of them, or either of them. Texas & P. Ry. Co. v. Fletcher, 6 Texas Civ. App., 738; Western U. Tel. Co. v. Hoffman, 80 Texas, 423; Gulf, C. & S. F. Ry. Co. v. McWhirter, 77 Texas, 361; Texas & P. Ry. Co. v. Kingston, 30 Texas Civ. App., 25; Galveston, H. & H. Ry. Co. v. Moore, 59 Texas, 64; Westbrook v. Mobile & Ohio R. R. Co., 14 Am. St. Rep., 587; South Covington, etc., Ry. Co. v. Herklotz, 47 S. W., 265; Barnes v. City of Shreveport, 49 Am. St. Rep., 400, and note; Siddall v. Jansen, 39 L. R. A., 112, and note; Cartersville v. Cook, 4 L. R. A., 721; Erie City Pass. Ry. Co. v. Schuster, 57 Am. Rep., 471; Cook v. Navigation Co., 76 Texas, 358; Evanisch v. Ry. Co., 57 Texas, 127; Union P. Ry. Co. v. McDonald, 152 U. S., 260; Poteet v. Blossom Cotton Oil Co., 53 Texas Civ. App., 187.

It was the duty of appellant not to permit Gracie Poteet, in view of her tender years and inexperience, to be present in its seed room and play and wander around among the dangerous machinery in operation there, unattended and uncared for. B. F. Poteet, being the employee of appellant in charge of said seed room, and the only employee of appellant in said seed room while Gracie was there, the duty devolved upon him not to permit her to so remain in said seed room, and appellant can not be permitted to say that the action of B. F. Poteet in so allowing Gracie to be and remain in said seed room was contrary to its orders, and contrary to its warnings given by it to Gracie or to her father or mother. Cook v. Navigation Co., 76 Texas, 358; Houston & T. C. Ry. Co. v. Bulger, 35 Texas Civ. App., 478; Missouri, K. & T. Ry. Co. v. Rogers, 89 Texas, 675.

MR. JUSTICE RAMSEY delivered the opinion of the court.

This case presents a question at once novel, difficult and important. That it may be understood we make the following liberal quotation from the opinion of the Court of Civil Appeals, which both outlines the contentions and claims of the respective parties and also gives in some detail and particularity the facts on which a recovery was by that court upheld:

"Appellant operated a cotton seed oil mill. Its seed house was situated about fifty feet from its main building, and was sixty feet wide north and south by 200 feet long east and west. Near the center of the seed house, along the floor thereof for a distance of 100 feet from its west end, appellant had constructed a box about twelve inches in height and about ten inches in width. In this box was a spiral or screw-shaped piece of iron or steel about nine inches in diameter, which, revolving, conveyed seed placed in the box to the cleaning machine and then to the mill in the main building. The covering for the box was in sections—each five feet in length, it seems—and was so arranged that desired openings through which to feed the iron conveyor inside the box could be made, leaving other

portions of the box covered. Besides the conveyer just referred to and others, there was in the seed room a sand screen and shaker and fan, three elevators, and shafting, belting and pulleys, located near the floor and unincased. There also was in the room a quantity of cotton seed. March 8, 1907, appellee Gracie Poteet, then about four and one-half years old, stepped into the box described above, while the iron conveyer referred to was revolving therein, and as a result her left foot was cut off and her left leg was so torn, crushed and injured as to make it necessary to amputate same about midway between her knee and hip. In her petition appellee, who sued by her next friend, after alleging that the seed room, because of the machinery and cotton seed therein, was an attractive place to children of her age, and that she had been invited and permitted by appellant's employee in charge of the room to go into same, further alleged that 'she was a small child, about four and one-half years of age, too young and inexperienced to understand or appreciate the dangers to her of being injured while in defendant's aforesaid seed room and about its machinery therein. On that day plaintiff was carried by her mother, the wife of the aforesaid B. F. Poteet, to defendant's said oil mill plant and into the seed -room where her father was at work in charge and control of said seed room in defendant's employ. That the purpose of her visit, on that occasion, as it had been on many days prior thereto, was to carry her father's dinner for him to eat and that her mother might perform his work while he was eating the same. While there, plaintiff was permitted to wander about and over said seed room among defendant's machinery, and on this occasion had passed to the opposite side of the seed conveyer from where her mother was shovelling seed into the conveyer and performing the work of B. F. Poteet, an employee of defendant, and said B. F. Poteet knew where she was and what she was doing. That the cotton seed were piled high where plaintiff's mother was shovelling them into the conveyer, and suddenly they caved in on her up to her waist and she called aloud to her husband to run to her assistance and to help her prevent the conveyer from choking up, and plaintiff hearing her and seeing her father run to her mother, and not appreciating the danger to herself in doing so, ran after her father and attempted to pass over the seed conveyer and stepped upon what appeared to be a solid foundation, over the same, made by a plank placed on the top of said conveyer, when suddenly her foot passed through an opening in said plank which had been obscured by an accumulation of cotton seed, and was caught by the large spiral-shaped steel piece of machinery, or screw, in said conveyer, and was injured' as complained of. She further alleged that at the time when she 'ran after her father to her mother and towards said hole in said seed conveyer said B. F. Poteet knew of the dangerous condition of the same and that said hole was in said conveyer and that it was deceptively covered with seed, and also knew that plaintiff was following him towards said hole, and could by the use of proper care have prevented her from stepping into said hole, but negligently failed to use proper care to prevent her from stepping into it.' Appellee further alleged that the injury suf-

fered by her was the result of appellant's negligence in failing to properly guard and cover the conveyer, in failing to keep cotton seed removed from it so as to expose the opening she stepped into, in permitting her to be and remain in the seed room, and in failing while she was there to use proper care to prevent injury to her. In its answer, after excepting to the petition and denying generally the .allegations therein, appellant specially denied that appellee was in its seed room by its invitation or consent, or by the invitation or consent or any of its employees authorized to give same; denied that Poteet at the time was in charge of the seed room in the sense that he had authority to invite appellee to enter the seed room, or permit her to remain there; denied that its machinery, etc., was attractive to children or that its attractiveness caused appellee to be in its seed room, and denied that it had been negligent in any particular in the construction of the seed conveyer, etc., and averred that said seed conveyer had been constructed and maintained with due care and skill and was not dangerous to those whose duties required them to be in the seed room; that appellee had been repeatedly warned not to enter said seed room, and that her mother and father had been repeatedly instructed not to bring or permit her to be in said room; and that the injury she suffered was an accident for which it was not responsible, and was caused solely by the negligence of appellee's father and mother in bringing her to and permitting her to remain in the seed room, and failing while she was there to properly look after and care for her.

"From the uncontradicted testimony it appeared that B. F. Poteet, appellee's father, was an employee of appellant's, charged with the duty to feed the conveyer in the seed room; that at about 12 o'clock on the day she was injured appellee accompanied her mother, who went to the seed room to carry to her husband his dinner, and while he was eating same, to take his place in feeding the conveyer; that while Poteet was engaged in eating his dinner and Mrs. Poteet was engaged in shovelling cotton seed from a mass of seed piled high on the floor, the seed began to slide down and to cover her and choke the conveyer she was feeding; that thereupon she called to her husband to come and assist her; that at that time Poteet and appellee were sitting down eating, about twenty feet from the conveyer, near or against the north wall of the building; that Poteet went hurriedly to his wife, crossing over the conveyer, and was followed by appellee; and that appellee in attempting to cross over the box containing the conveyer stepped into same through an opening therein and was injured as alleged. It further appeared that at once after appellee got into the seed room and until her father began to eat his dinner, she played around in the room on or with the cotton seed. As to the circumstances immediately surrounding the accident Poteet testified as follows: 'I took my dinner and went over next to the north wall and sat down, and Gracie got up and said: "Daddy, I believe I will eat dinner with you;" and she set down, taken out some meat and bread and went to eating; and the seed where my wife was feeding was piled up as high as this ceiling (indicating ceiling in courtroom), and she had dug out through the seed, she had dug out until the

seed slid down around her waist, and she hallowed to me, for me to
help her; and when I started Gracie started and said: "Daddy, I
am coming, too." I never thought about the child getting hurt, and
run to my wife; I was thinking about my wife and the seed sliding
in on her, and the next thing I knew I got on top of the conveyer,
and the next thing I knew Gracie was at my heels; and the next
thing Gracie hallowed, "Mamma! Mamma!" and I turned around
and seen she was fastened, and it scared me until I didn't know what
to do, but all I thought of was running and throwing the belt, and
run something like 100 feet, kicked the belt off and stopped the
machinery.' "

It reasonably appears from this statement and is rendered more
certain by the evidence that the child Gracie was not at the mill, at
the time she received her injuries, because allured and attracted
there by reason of the fact that it appealed to her childish curiosity
and interest, but that wholly aside from any attractive quality of the
place she was carried there by her mother without invitation, express
or implied, wholly as a matter of convenience or voluntary choice on
her part. We may therefore at once dismiss the view of the attrac-
tiveness of the place as having no proper place in the case and as
furnishing of itself no basis of recovery.

There is some evidence that after her arrival at the mill Gracie
played for a short time around in it, but again the testimony of her
father renders it clear that just before she was hurt she was quite
a distance from any machinery and in a position of safety. We
think, therefore, the fact that she had at any time prior to assuming
a position of safety, been playing about or around in the mill be-
comes a fact of absolutely no consequence. It is not contended, nor
do the facts even tend to show, that she was injured by the act or
negligence of any servant, agent or employee of the oil mill. The
most that can be claimed is that her father, a servant of the mill,
neglected the duty which it is claimed the law imposed on him, of
using reasonable care to prevent the injury. Nor can it be success-
fully claimed that the machinery of the mill, was as to her, defective
or that the company, as to her, was liable by reason of the condition
of such machinery and appliances. In the case of City of Greenville
v. Pitts, 102 Texas, 1, it was held that while the proprietor of an
electric light system owed the duty to properly insulate its wires
placed on the roof of a private building for the protection of such
persons as had a right to go on same, such duty did not extend to
trespassers or mere licensees upon the premises and that they could
not recover for injuries due to such defective insulation. Here
Gracie was at best a mere licensee and could not recover merely
because of the condition of the machinery. Therefore the question
comes to this, as submitted by plaintiff in error and copied into the
opinion of the Court of Civil Appeals on motion for rehearing:
"Under the evidence exhibited by the record, is it possible that the
court can hold that the mother, over the protest of the mill manage-
ment, can bring her child into the mill where the father is employed
as a day laborer and who also has been told not to allow the child
to enter, and thereby impose the duty on the mill owner to watch

over and care for her to see that she does not voluntarily injure herself?" This is, as we conceive, the issue in the case and on its proper determination must rest the rights of the parties. We think that ordinarily in reason and from considerations of humanity the rule announced by this court that, in analogy to the doctrine of discovered peril, when an employee in charge of dangerous machinery sees a child of tender and immature age and discretion intruding into such place of danger it becomes the duty of such servant to take steps for the protection of such child, should be followed and affirmed. This rule, however, proceeds on the principle that such child is incapable of protecting itself, and that the owner of such building and place where such child has come, can not in indifference and unconcern, permit such child, so unprotected and therefore most subject to injury, to be hurt. The fact of the unprotected condition of the child is a view of the case never to be lost sight of. But we have been cited to no case or other authority, and we have in our own research found none which sustains this recovery. Indeed, there is an almost utter dearth of authority on the question. There is in the case of Norman v. Bartholomew, 104 Ill. App., 667, an expression by that court which in effect supports the contention of the plaintiff in error. That was a suit by Homer Bartholomew, suing by his mother as next friend, against Norman for damages for injuries resulting in the loss of his arm. The pleadings were quite voluminous and too lengthy to set out here, but among other things it was averred that Norman was negligent in permitting the plaintiff, who was some eight and a half years old, to be and remain in and about his dangerous machinery. There was evidence that plaintiff's mother called him into the room in or near which he was injured. There are some expressions in this opinion which we would not sanction, but the following paragraph in same seems both sound and in point:

"It seems manifest to us that it would be absurd to hold that the appellant should have warned the appellee of the dangerous character of the mangle under the circumstances disclosed by this record, when the mother of the appellee under whose special care he was at the time he was injured, with full knowledge of the character of the mangle, had voluntarily required her son, in order to shield him from a quarrel with another boy, to remain near to the mangle, thus showing that she did not regard the mangle as being so dangerous, and yet inviting to the childish instinct of her son, as to require her to warn him of its danger, or to refrain from causing him to sit near to it unrestricted."

But independent of authority it seems to us, in legal reason, there ought not in this case to be a recovery. All efforts to impose on Poteet, the employee, a duty at variance with his duty as a father, in respect merely to a failure to take steps to secure the protection and safety of his child, and to hold his employer liable for such failure is, to our minds, merely playing with words and a confusion of terms. Undoubtedly the law imposed on him the duty to protect his child whether he is master or servant. To discharge this duty he was under the strongest obligations which can affect or move any man. To this legal duty was added the incentive of love and the

obligations of paternity. He might cease to be an employee. He could never cease to be a father while he had life and being. If we could assume that the managing officer of plaintiff in error had seen the child in the mill with her father and at the time in a place of safety as she was, could it not be assumed and ought it not to be held that the company might rely on the natural affection common to all humanity, an affection which money can not buy nor time wither, as to dangers known to the father, to take proper and effective steps to secure such child from injury? In order to hold the oil mill liable there must be evidence of negligence and that its conduct in the circumstances appearing in the case was violative of some duty which the law imposed on it. So situated, might it not trust to the protection which both law and duty would assure? The duty to protect the child, in the possession and under the immediate control of both the father and mother, is both legal and moral and is continuing and affirmative, and at least until it is known that they have abandoned the child, and its danger becomes apparent, the master is not liable. To hold otherwise would, as we believe, be at variance with correct legal principles and out of harmony with all that moves and controls men in the affairs of life. On the other hand, the conclusion to which we have arrived attains what should always be the supreme and ultimate end of the law—justice,- of which it may be truly said that "the merchandise of it is better than the merchandise of silver and the gain thereof than fine gold." "Ye can not serve two masters" is not only the declaration of Holy Writ, but as well the experience of all the ages. The father could not in the circumstances of this case, as we believe, be held to abdicate the high duties of father to the end and with the effect of stamping his conduct as mere employee with such negligence as to render his employer liable.

If these views are sound it logically results that defendant in error is not entitled to recover and that the judgment of the Court of Civil Appeals should be reversed and judgment here rendered for plaintiff in error, and it is so ordered.

*Reversed and rendered.*