**MAGNOLIA PETROLEUM CO. v. PORTER et ux. (No. 2333.)**

Court of Civil Appeals of Texas. El Paso. Nov. 14, 1929.

Rehearing Denied Dec. 12, 1929.

W. H. Francis and A. S. Hardwicke, both of Dallas, E. R. Surles, of Wichita Falls, and H. R. Wilson, of Fort Worth, and Carrigan, Britain & King, of Wichita Falls, for appellant.

E. W. Napier, of Wichita Falls, for appellees.

PELPHREY, C. J. In the year 1919, appellee T. J. Porter entered the employ of appellant as a pumper, and together with his family resided on what is known as the Corsicana lease.

Prior to the discovery of oil on the premises, there had been a tank or lake thereon, a dam having been erected at the lower end of a depression on the lease thereby collecting and holding the water which naturally drained into the depression from the surrounding land.

When Porter and his family first moved on the land the dam was cut and the water was not collected in the depression; but during November, 1926, at the request of the owners of the surface. appellant repaired the dam, and thereafter the depression filled with water and formed a lake.

There were some rod lines running across the depression from the power house of appellant to some wells on the opposite side which were being pumped from the plant in the power house. The rod lines were supported on pipes driven into the bed of the depression and a footbridge erected by appellant along said rod lines.

On the 25th of April, 1927, two of the children of appellees were drowned in the lake—Earl, a boy, nine years of age, and Neva Sue, a girl, almost seven years of age.

Appellees filed this suit in the Thirtieth district court of Wichita county, Tex., to recover damages for the death of said children.

Appellees, as grounds for recovery, alleged that appellant was negligent, in that the rod lines and footbridge erected by appellant constituted an attractive nuisance, and dangerous to children of tender years; that appellant failed to maintain at or near the bridge warning signs of the danger; and that the bridge was too narrow and had no handrails.

Appellant answered by general demurrer, special exceptions, a general denial, and specially pleaded that appellees were negligent in permitting the children to go upon the footbridge and rod lines that crossed the lake.

The case was submitted to a jury upon special issues, and they found:

That the bridge and rod lines were especially and unusually attractive to Earl and Neva Sue Porter and children of like age and condition, as a place to play.

2. That appellant knew, or in the exercise of ordinary care could have known, of such attractiveness.

. 3. That said bridge and rod lines was a dangerous place for the children to play after the lake filled with water.

4. That appellant knew, or by the exercise of ordinary care would have known, of the dangerous condition prior to April 25, 1927.

4½. That appellant knew, or by the exercise of ordinary care could have known, that the deceased children might likely play upon the bridge and rod lines after the tank was filled with water.

5. That the deceased children went. upon the bridge by reason of the attractiveness of it and the rod lines.

6. That the deceased children were drowned by falling from the bridge.

7. That a raft which was on the lake did not attract the children to go upon the lake at the time they were drowned.

8. That they did not drown as a result of falling off the raft.

9. That they did not drown as the result of an accident.

10. That it was negligence on the part of appellant to maintain the rod line across the lake after it filled with water, and that such negligence was a proximate cause of the children's death.

11. That the appellant failed to maintain warning signs at or near the bridge; that such failure was negligence and a proximate cause of the children's death.

12. That appellant was negligent in constructing the bridge too narrow, and that such negligence was a proximate cause of the death of the children.

13. That appellant was negligent in failing to have a handrail on the bridge, and that such negligence was a proximate cause of the death of the children.

14. That appellees exercised reasonable care and parental supervision to prevent the children from riding upon the raft.

15. That appellees permitted the deceased children to go upon the footbridges, and ride the rod lines prior to the time the water came into the tank.

16. That a person of ordinary prudence under the same or similar circumstances would have permitted children to play on the footbridges and ride the rod lines at such time.

17. That the deceased children went upon the footbridge and rode the rod lines after water came into the tank.

18. That appellees exercised reasonable care and parental supervision to prevent them from so doing.

19. That a reasonably prudent person would not have permitted Roger Porter, an older son of appellees, to maintain the raft on the tank under all the circumstances, and that such act on the part of appellees was not a proximate cause of the death of the children.

20. That appellees, prior to the death of the children, did not advise appellant that the footbridges were dangerous to the children, and that their failure so to do was not negligence.

21. That $7,000 fairly represented the sum which both of appellees could reasonably expect to receive from the deceased children after they had reached their majorities, if they had lived, and the reasonable value of their services until they attained their majority, deducting therefrom the reasonable cost and expense appellees would have incurred in educating, supporting, and maintaining them.

22. That prior to April 25, 1927, appellees knew that the bridge and rod lines were dangerous, and also knew that, if the children should go upon the bridge and rod lines, they might fall therefrom and be drowned.

23. That appellee T. J. Porter did not acquiesce in the way and manner in which the footbridge was constructed.

24. That on April 25, 1927, the dangerous condition created by the bridge and rod lines was not open, visible, and unconcealed, and was not known to the deceased children.

25. That George H. Lewis, appellant's lease foreman, through their father, warned and forbade the deceased children from going upon the bridge and rod lines after the water came into the tank.

26. That appellees knew, or by the exercise of ordinary care could have known, that the deceased children would likely go upon the bridge and rod lines after the water came into the tank.

Upon these findings the court rendered judgment in favor of appellees, and the Magnolia Petroleum Company appeals.

### Opinion.

The first 13 propositions of appellant question the court's action in refusing its requests for a peremptory instruction in its favor. These requests were made at the conclusion of appellees' evidence as well as at the conclusion of all the evidence.

Appellant's contention being that it was entitled to such peremptory instruction for the following reasons: That the lake, bridge, and rod lines were all open, unconcealed, and visible to the deceased children, no hidden dangers in connection therewith, and did not constitute an attractive nuisance; that the evidence failed to show any express invitation; that the bridge and rod lines were admittedly safe before the water came into the tank, and therefore did not fall within the attractive nuisance doctrine; that the evidence showed that the footbridge was constructed for the use of its employees and not for the public, and that it was not only safe for their use, but admittedly so for the use of the children before the water came into the tank;

and, further showing that appellant did not own, use, nor control said tank, appellant was not liable for the conditions resulting from the water being in the tank; that by reason of having lived on the premises for years, being familiar with the dangerous conditions thereon, and their continued living thereon, appellees voluntarily took upon themselves the risk and elected to take the chance of the children not being injured or drowned; that knowing (and the jury having found that they knew) that the children were likely to go upon the bridge and play on the rod lines; that to do so was dangerous after the water came into the tank; that they would likely fall from the bridge and be drowned; appellees, by continuing to live and keep the children in the proximity of the tank without objection or complaint to appellant voluntarily took upon themselves the risk, incurred the hazard, assumed the danger, and assented to the possibility of the children being drowned; and that, the relation of landlord and tenant existing between appellant and appellees, appellees took the risk of the safety of such premises, there being no hidden defects or concealed dangers, no misrepresentation as to the condition of the premises, no promise by appellant to put them in a different condition, and no warranty that the premises were safe for the purpose for which they were rented.

A great part of the space in the briefs of both parties has been devoted to a discussion of the "attractive nuisance doctrine" and in attempting to show that it did or did not apply to the facts here.

■ We have made a careful study of the authorities cited by both parties as well as numerous others, and have reached the conclusion that the doctrine of "attractive nuisance" has no application to the facts before us.

The facts here show that appellee Porter moved his family into the house which had been built for him by appellant with no understanding being had as to how much of the premises should be used by him and his family; that no inclosure of any kind was erected around the house; and that the children used the bed of the tank or lake as a playground, with the full knowledge of appellant prior to the repairing of the dam and the filling of the tank with water.

These facts lead to the inevitable conclusion that the children were not trespassers on any part of the lease, unless the warning given to their father by Mr. Lewis, the lease foreman, would have that effect as to the rod lines and bridges across the lake. If that warning can be given such effect, then we might have a case where the doctrine would apply. We deem it unnecessary, however, to further consider that question in arriving at our conclusion as to the merits of this case.

■ It cannot be disputed that appellee Porter, as the employee of appellant, having full knowledge of the attractive and dangerous nature of the rod lines and bridges, was obligated to use at least ordinary care to see that children, whether his own or those of other people, did not go upon them, after the water came into the tank.

This obligation was further increased by the warning from the lease foreman. This duty, however, pales before the higher duty imposed upon him as the father of the children.

The words of Justice Ramsey of the Supreme Court in the case of Blossom Oil & Cotton Co. v. Poteet, 104 Tex. 230, 136 S. W. 432, 435, 35 L. R. A. (N. S.) 449, that: "The duty to protect the child in the possession and under the immediate control of both the father and mother is both legal and moral and is continuing and affirmative, and, at least until it is known that they have abandoned the child and its danger becomes apparent, the master is not liable. To hold otherwise would, as we believe, be at variance with correct legal principles and out of harmony with all that moves and controls men in the affairs of life. On the other hand, the conclusion to which we have arrived attains what should always be the supreme and ultimate end of the law—justice, of which it may be truly said that 'the merchandise of it is better than the merchandise of silver and the gain thereof than fine gold.' 'Ye cannot serve two masters' is not only the declaration of Holy Writ, but as well the experience of all the ages. The father could not in the circumstances of this case, as we believe, be held to abdicate the high duties of father to the end and with the effect of stamping his conduct as mere employé with such negligence as to render his employer liable"—are pertinent to the facts before us.

The above language was used in a case where the child was injured in the machinery of the company by whom the father was employed, and a judgment for the benefit of the child was reversed and rendered.

The only case which we have found with an analogous state of facts is that of Pennington v. Little Pirate Oil & Gas Company, 106 Kan. 569, 189 P. 137, 138.

In that case Pennington and his family were living on the premises of the oil company, and he was employed as their pumper. As in this case, the family, or part of them, assisted him in his labors. One of Pennington's little boys become entangled in a belt in the power house and was killed.

The Supreme Court of Kansas, after holding that the machinery in the power house was not an "attractive nuisance" used this language: "If there was any want of care in the premises, it is chargeable to the plaintiffs themselves. They had control and management of the power plant and also the care and control of their children. The defendant could not be expected to supersede the plaintiffs in the direction and guardianship of the children, and neither can it be held respon-

sible to them for their own inattention nor lack of care." While we have the greatest sympathy for the parents in this case, who have lost the greatest of this world's possessions by this most unfortunate occurrence, yet we must not permit sympathy to usurp the place of justice.

Appellee Porter, at the time of this occurrence, was the only employee of appellant on the premises and its alter ego; upon him rested the duty to keep immature children away from what he testifies was a dangerous instrumentality.

A further duty as a father, one which he had no right to expect another to assume, and which called upon him for eternal vigilance, was also his.

Can it be said that, in spite of these obligations, he can recover his damages from one by whom he was employed and to whom he owed the duty to prevent the very thing that happened? We think not.

We have concluded that the damages here sued for were occasioned by the lack of that care which appellees were called upon, under the facts here to exercise, both as employee and as parents. If these views are sound, it logically follows that appellees are not entitled to recover, and the judgment of the trial court should be reversed and judgment here rendered for appellant; and it is so ordered.

Reversed and rendered.