**QUISENBERRY v. GULF PRODUCTION CO.**

No. 1131.

Court of Civil Appeals of Texas. Eastland.

June 9, 1933.

Rehearing Denied Sept. 22, 1933.

Frank S. Roberts, of Breckenridge, and E. W. Bounds, of Fort Worth, for appellant.

John E. Green, Jr., of Houston, P. O. Settle and William Wise, both of Fort Worth, and Harrell & Allison, of Breckenridge, for appellee.

HICKMAN, Chief Justice.

Chester Quisenberry, a minor, brought this suit through his father, L. E. Quisenberry, as next friend, against the Gulf Production Company for damages sustained by the minor while playing upon a frame insecurely placed on a tubing rack, which rack and frame, it was alleged, constituted together an inherently dangerous instrumentality attractive to children of immature years. Upon the conclusion of appellant's evidence, the trial court sustained a motion of appellee for a peremptory instruction, and upon the verdict returned in obedience to such instruction judgment was rendered that appellant take nothing. From that judgment this appeal is prosecuted.

In determining the question of whether appellant's evidence raised material issues of fact which should have been submitted to the jury, it is our duty to consider the evidence in the light most favorable to him, and our statement will be understood in that light.

The accident occurred in June, 1927, at or near a camp maintained by appellee for its employees on the Ward lease in Stephens county. Appellant's father went to work for the appellee in 1920, and continued as its employee until in July, 1926. On August 23, 1926, he was re-employed by the company, and, together with his family, moved into a house located in what is commonly called an oil camp. There were several houses in this group situated near each other, with no fences separating them. In the vicinity of these houses, and about 100 yards from the house occupied by the Quisenberrys at the time of the accident, there was a rack about 3½ feet high and 14 feet long, used primarily as a place on which to keep tubing and rods, upon which rack was stored a frame used on trucks and trailers for hauling tanks of oil. This frame was about the width of a truck bed and was longer than the rack. It was constructed of 2x6 lumber and iron rods and strips. Its estimated weight was from 600 to 800 pounds. It was not resting securely upon the rack, but was placed diagonally across it in such manner that it would rock when a child got upon it. On the day of the accident, Chester, who was then five years old, and his cousin, Hoy Brown, six or seven years old, climbed upon this rack and frame to play. They got on the frame and began to rock it, and, as it overturned, Chester struck the ground first, and the frame fell upon his head, inflicting the injuries for which damages are sought. There was no inclosure about any of the premises, except the landowner's pasture fence, which inclosed the large tract of land on which the camp was located. There is some conflict in the evidence as to the immediate occasion of the boys' being at this rack. L. E. Quisenberry, the father, testified that a short time before the accident he discovered the boys playing in an old cellar some distance beyond the rack from the house, and directed them to go back home. He went on about his work as a pumper on a well a mile or more distant, and did not observe the boys to obey his command. Q. P. Quisenberry, an older brother of Chester's, testified that his mother sent him to the site of this old cellar to tell the boys to come to supper, and that, in going home, the boys, who were about 100 yards ahead of him, climbed upon this rack, and the accident occurred just as he arrived on the spot. Chester did not testify, but the boy who was with him, Hoy Brown, denied that the father had commanded them to leave the cellar, denied that Q. P. found them there

and told them to come to supper, said that it was not supper time, and they were not on their way to supper, but that they were out searching for a good place to play, and found this rack and frame, which was convenient to climb upon, and got on it to play. In so far as this evidence conflicts, we must consider it in the light most favorable to appellant.

There was evidence that children had played around this frame, with the knowledge of the "gang-pusher," who was in charge of the premises, prior to the time of this accident, but no evidence that any children had theretofore played on this frame or rack. Appellant's father knew of the unsafe position of this frame upon the rack, and notified the gang pusher of the fact more than once. The frame was so heavy that he himself could not move it over on the rack and make it secure. It was his duty, when he discovered an unsafe condition which he himself could not remedy, to notify the gang pusher. A short time before the accident, Quisenberry moved his family from one of the houses farther away from the rack to the house nearest it, and within about 100 yards thereof.

We find it unnecessary to detail the pleadings of the parties, since no question as to the sufficiency thereof is involved. It is sufficient for the purposes of this opinion to state that negligence was charged to the appellee in maintaining the condition above described when it knew that children lived in that vicinity and played about the premises, and because of their nature and habits they would probably be attracted to play seesaw on this frame and be injured thereby. Liability is sought to be predicated upon the doctrine known as the doctrine of the turntable cases. Because of the peculiar nature of that doctrine and the consequent lack of well recognized rules governing its application to a given state of facts, we have made an extended study of the authorities and decisions from this and many other states in our consideration of this record, but we are convinced that it would be useless to review the cases and impossible to harmonize them. We cannot take issue with the learned author of an exhaustive case note in 36 A. L. R. pages 34 to 294, wherein he states on page 100: "The attractive-nuisance doctrine has had a somewhat checkered existence in Texas, as in some other states." However, we believe it may be said that there are no real conflicts in the holdings of our Supreme Court on the question. Some of the later holdings modify the language employed in the earlier cases; the effect of the modifications being to extend the doctrine rather than to restrict it. We are convinced that limitations on the broad doctrine are to be carefully observed to keep it within proper bounds. But, when the recognized limita-

tions are observed, there is no sound reason for denying or unduly restricting its application.

In 36 A. L. R. page 294, five cardinal rules are deduced for determining the applicability of the doctrine to a given state of facts. These rules constitute the best summary of the law which we have found. They recognize the proper basis for the application of the doctrine, while, at the same time, they observe the established limitations upon its application. They are as follows:

"First. That the injured child was too young to understand and avoid the danger.

"Second. That there was reason to anticipate the presence of such children, either because of some attraction on the premises, or because the danger was in some place where children had a right to be.

"Third. That there was a strong likelihood of accident.

"Fourth. That the danger was one other than those ordinarily encountered.

"Fifth. That the precautions not taken were such as a reasonably prudent person would have taken under the circumstances."

The facts of the instant case fulfill every requirement of these five rules: First, the child was five years of age. There was presented, at least, a jury question as to whether such child was too young to understand the danger. Second, the appellee had reason to anticipate the presence of such children. The danger was near where appellee knew the children lived. There can be no distinction between maintaining an attractive nuisance uninclosed near houses in which children are known to live and maintaining it near a highway or playground. Further, this frame, being so situated as that it could be rocked by a child, was probably attractive to children. We do not understand that to constitute an attractive nuisance the thing attracting the children must be painted in gaudy colors that would attract a savage, but rather that it makes an appeal to their natural propensities to play. To revolve on a turntable is no more attractive to small children than to rock or seesaw. We believe an issue of fact was certainly presented as to the attractive nature of this frame in its position of unstable equilibrium. Charles v. El Paso Elec. Ry. Co. (Tex. Com. App.) 254 S. W. 1094; Busse v. Rogers, 120 Wis. 443, 98 N. W. 219, 64 L. R. A. 183; Bransom v. Labrot, 81 Ky. 638, 50 Am. Rep. 193. Third, there was a strong likelihood of the accident. The fact that this frame, weighing 600 to 800 pounds, was so balanced as that it would be caused to topple over by the weight of a small child, discloses a strong likelihood of accident when it is considered that such a child would likely climb upon it to rock or seesaw. Fourth, the danger was one not ordinarily encountered. And, fifth, it was a jury issue as to whether a reasonably prudent person would have taken precautions to guard against this accident.

It is claimed that appellant's father was the person charged by law with the duty to see that his child was not injured by coming in contact with this danger, and that therefore no duty rested upon the appellee in the premises. In support of this contention, the appellee relies upon the cases of Blossom Oil & Cotton Co. v. Poteet, 104 Tex. 230, 136 S. W. 432, 35 L. R. A. (N. S.) 449; Magnolia Petroleum Co. v. Porter (Tex. Civ. App.) 22 S.W.(2d) 695; and Stimpson v. Bartex Pipe Line Co., 120 Tex. 232, 36 S.W.(2d) 473, 476. The facts in the Poteet Case are so different from those involved here as to make the language of Justice Ramsey in that opinion wholly inapplicable. In that case the child was taken by his parents into the room where the dangerous machinery was situated, and was in the immediate presence, and under the direct supervision, of its parents at the time the injuries were sustained. There is some language in the Porter Case which seems to uphold the doctrine advanced by appellee, but it was not necessary to the decision in that case. Undoubtedly the correct conclusion was arrived at in that case, for the reason that the injuries were suffered merely because the children fell off of a structure, and not because of any inherent defect in the structure. The danger to which the children were exposed in that case was obvious, even to the children themselves. That decision is justified on the ground that the owner of the property could not have reasonably anticipated or guarded against such accidents in the exercise of ordinary care. The facts in that case did not meet the requirements of rules 3, 4, and 5 above quoted.

This language in the Stimpson Case is relied upon by appellee: "We think it a salutary rule which imposes the duty to guard a child of such immaturity as to be unable to appreciate patent and unconcealed dangers upon the parent instead of the landowner."

That language does not apply to dangers that are not patent and unconcealed, and the opinion which employs it cites with apparent approval the case of Bransom v. Labrot, supra, as an example of a concealed danger. Under that holding the danger in the instant case was clearly a latent and concealed one, and the rule above quoted would have no application. We are in thorough harmony with the decision in the Stimpson Case for the same reasons that we are in harmony with the decision in the Porter Case, and believe that the opinion on the whole lends no support to appellee's contention on the point under consideration. The language of Justice Stayton in Galveston H. & H. Ry. Co. v. Moore, 59 Tex. 64, 46 Am. Rep. 265, in dis-

posing of a similar contention, is very convincing. We quote from that opinion as follows:

"The case of Waite v. North-Eastern R. R. Co., El., Bl. & El., 719, is the leading English case upon the subject, and seems to limit the operation of the rule to those cases where the parent or custodian is actually present and directing or controlling the action of the child, and to us this would seem to be the utmost limit to which the rule in reason and upon sound principle could be extended. This rule seems to have been recognized in the case of Stillson v. Hannibal & St. J. R. R. Co., 67 Mo. 671.

"The basis of all obligation to compensate for an injury resulting to a child of tender age, not capable of contracting, arises from a breach of duty.

"In case of a parent, the duty of protecting the child from injury is a legal one, which ordinarily finds sufficient promptings in parental affection to induce its full performance.

"The parent is under a legal obligation to educate and maintain the child, and it has no legal claim upon others to perform that duty; but the obligation to do no act which will result in injury to a child rests upon all persons and corporations as well as upon the parent, and in this respect it does not differ even in degree. With the parent the duties are largely affirmative; with others they are mostly negative.

"In the case of persons and corporations exercising a dangerous public employment, as was the defendant in this case, in the center of a city, this negative duty is peculiarly strong; and it is difficult to perceive the legal principle which will excuse them from its performance, upon the ground that some other person, even though that person be a parent, charged with a like duty, may have neglected to perform it.

"This is the logic of the rule by which the defendant in this case seeks to be excused for its own failure of duty."

Appellee further seeks to uphold the judgment of the trial court under the rules applicable to the relation of landlord and tenant. Its proposition is that, since appellant's father was appellee's tenant, and there was no evidence of any agreement by the landlord to repair the demised premises, and since appellee was not guilty of any fraud or concealment by failing to disclose hidden defects on the premises, the tenant took the risk of the safety of the premises, and the appellee is not liable either to the tenant or his son for the injuries sustained. The rule relied upon is a well-established rule in a case where the facts make it applicable. Churchwell v. Pure Oil Pipe Line Co. (Tex. Civ. App.) 289 S. W. 196; Perez v. Rabaud, 76 Tex. 191, 13 S. W. 177, 7 L. R. A. 620.

■■ But it clearly has no application in this case. Conceding that the relation of landlord and tenant existed between appellee and appellant's father, and that the rack and frame were situated within the range of what might be denominated the leased premises, there remains no ground for the application of the rule. The portion of the premises upon which this rack was built was not controlled by the tenant, but was reserved to the landlord. This property might be termed "the Commons." There were many tenants in this camp using the land adjacent to these houses. In this situation, it is the rule that, where the landlord reserves under his control certain parts of leased premises to be used either by himself or in common by all the tenants, the duty devolves upon him and not upon the tenants to keep in repair the parts reserved. O'Connor v. Andrews, 81 Tex. 28, 16 S. W. 628; Archibald v. Fidelity Title & Trust Co. (Tex. Civ. App.) 296 S. W. 680; Malott v. City of Brownsville (Tex. Com. App.) 298 S. W. 540; 36 C. J., p. 212, § 887; Id. p. 216, § 895; 16 R. C. L. pp. 1036, 1037; Peklenk v. Isle Royale Copper Co., 170 Mich. 299, 136 N. W. 352.

It is our opinion that the facts of the instant case bring it squarely within the rule governing the so-called turntable cases. It follows that we believe the trial court erred in giving the peremptory instruction, for which error the judgment of that court will be reversed and the cause remanded.