## McGINTY et al. v. TEXAS POWER & LIGHT CO.
### No. 11433.

Court of Civil Appeals of Texas. Dallas.
March 3, 1934.

Rehearing Denied May 5, 1934.

White & Yarborough, of Dallas, for appellants.

Worsham, Rollins, Burford, Ryburn & Hincks, of Dallas, for appellee.

JONES, Chief Justice.

Ray McGinty, appellant, was nineteen years of age at the time this suit was filed, and the suit was instituted through others as next friends, but he reached his majority before the suit was tried, and by permission of the court it was then prosecuted in his own name; so the term appellant will apply to the injured plaintiff. The suit was instituted against appellee, Texas Power & Light Company, a corporation, judgment of dismissal on demurrers was rendered, and appellant has duly prosecuted this appeal. The following are the necessary facts:

The trial court sustained special exceptions to each of the many grounds of negligence alleged by appellant and, after appellant declined to amend the petition in respect to the allegations, setting out these various grounds of negligence, the court sustained a general demurrer to the petition, and dismissed the suit when appellant again declined to amend his petition. The material facts alleged in the petition, therefore, constitute the statement of facts, for such alleged facts must be taken as true as against a general demurrer and as against a special exception having the force of a general demurrer. The necessary facts alleged in the petition are:

Appellee is a corporation, engaged in distributing electrical power for a profit. One of its customers was appellant's employer, Dallas Washed & Screened Gravel Company, which operates a plant in the western part of Dallas county near the Trinity river. For convenience, this employer will be termed Gravel Company. Its machinery and lighting equipment were operated by electric power furnished by appellee. In order to furnish the Gravel Company with its required electrical power, it was necessary for appellee to construct, near the Gravel Company, a kind of substation, on which is located a transformer and other necessary electrical appliances, and from which there radiated wires

**356**

carrying different currents of power; also in order to measure the electrical current used by the Gravel Company, it was necessary to install a meter as a part of this substation. Among other wires connected with this electrical machinery was a high-tension wire, carrying a deadly voltage of electricity; also two wires to serve only the Gravel Company. Appellee's electrical machinery and appliances were placed on a platform, supported by poles, seven feet from the ground. The only way this construction offered to any one to get on the platform, supporting these electrical appliances, was by climbing one of the poles supporting the platform. On the sides of these appliances was a narrow platform, or runway, constructed without any machinery or appliances thereon. This runway was on a level with the platform on which the machinery and appliances rested. None of the wires were insulated.

Appellant was approximately nineteen years of age when injured, and was an experienced employee of the Gravel Company. He was unacquainted with electrical appliances and ignorant of the manner of their use, but he had worked for the Gravel Company over a long period of time and must have known of the general nature of appellee's electrical appliances.

It became necessary for the Gravel Company, in pursuance of its work, to move what is described as a "drag-line" from one side of its machinery to another. In order to make this removal, it became necessary to disconnect the two wires, alleged to serve only the Gravel Company, from their connection with appellee's meter, and appellant was directed by his superintendent to make such disconnection. In obedience to such order, appellant climbed up on appellee's platform, on which rested the electrical transformer and other electrical appliances, disconnected one of the wires and, while attempting to disconnect the other, came in contact with the high-tension wire, as a result of which he received serious painful and permanent bodily injuries.

The Gravel Company was an "employer" under the Workmen's Compensation Act (Vernon's Ann. Civ. St. art. 8306 et seq.), and carried compensation insurance. Appellant made a claim before the Accident Board, under the Workmen's Compensation Law, and an award was made in his favor. Soon thereafter, however, the carrier of the compensation insurance became insolvent, was placed in the hands of a receiver, and no substantial sum has been paid on this award. Appellant instituted this suit against appellee as a common-law action for damages because of injuries resulting from appellee's negligence. No question is raised on this appeal as to appellant's rights to prosecute this common-law action, after his election to pursue the remedy allowed under the Workmen's Compensation Law, and such matter will not be further alluded to.

With these facts as a basis, appellant alleged numerous acts of negligence. The petition is necessarily voluminous, alleging specifically certain facts designed to remove appellant, because of his act in going upon appellee's platform on which its electrical equipment is located, from the status of a mere licensee or trespasser, and to give him the status of an invitee; also designed to show that appellee owed to appellant the duty to observe ordinary care to protect him from the dangers incident to high voltage wires; also to show that there was a breach of such duty and that, in consequence thereof, appellant received his injuries. Such allegations, in effect, are: That the platform, on which rested appellee's electrical equipment, is on land owned by the Gravel Company and near its plant; that the meter was placed in close proximity to the electrical appliances; that appellee knew, or should have known, that the Gravel Company would, from time to time, have to disconnect the wires attached to the meter (on which work of detaching appellant was engaged when injured) when a necessity arose to move its drag-line, and that there was an open runway on the side of the platform on which rested appellee's electrical machinery and appliances. With these facts as a basis, the legal conclusion is alleged that the employees of the Gravel Company, and particularly appellant, were expressly and impliedly invited to go upon appellee's said platform for the purpose for which appellant had gone thereon. With the assumption that, at the time of his injury, appellant was upon the platform as an invitee, and not as a mere licensee or trespasser, the petition alleges that appellee did not observe ordinary care for appellant's safety while doing the work required of him by his employer when he was injured, in that appellee's wires, carrying a dangerous voltage of electricity, were not insulated, or in any way protected from transmitting its dangerous current to one who might come in contact therewith; that there was no warning, either through printed and posted signs of danger, or by verbal or written communication to the Gravel Company, that danger from such wires existed to the one using the platform; that the meter to

which the wires, sought to be disconnected, were attached, should not have been placed in such close proximity to appellee's high voltage wires as to render it dangerous for the Gravel Company's employees to disconnect wires from such meter. Appellee's failure in respect to each of these allegations is alleged to be negligence and a proximate cause of appellant's injuries.

The petition also seeks to show that appellant had a right to go upon the platform, upon which was operated appellee's electrical machinery and appliances, by allegations to the effect that there existed a mutual interest between appellee and the Gravel Company in the platform and electrical equipment; that such mutual interest was created by reason of the construction of said platform in the close vicinity of the Gravel Company's plant, for the mutual benefit of appellee and the Gravel Company, in that appellee thereby availed itself of the opportunity to sell its electrical power to the Gravel Company, and the Gravel Company availed itself of the opportunity to purchase such electrical power; that in consequence thereof, appellee owed to the Gravel Company's employees the duty of exercising · ordinary care for their safety while using the platform for the purposes heretofore stated.

■ It is elementary that electrical companies are bound to use reasonable care in the construction and maintenance of their lines and necessary appliances; that is, such care as a reasonably prudent person would use under the circumstances for the safety of any one rightly in the vicinity, or on the premises, of such electric company. In all cases of negligence, the degree of care exacted must be commensurate with the danger involved. 9 R. C. L. 119, § 13, and authorities cited in notes. It may be stated that, at this time in the history of the use of electrical power, it is common knowledge that all electrical machinery and appliances, from which emanate wires carrying sufficient voltage to furnish the power to operate machinery, are dangerous to personal contact, and that every person going upon the immediate premises where such electrical machinery is operated, and from which such dangerous wires emanate, is charged with knowledge that, in doing so, he environs himself with grave danger.

■■ It is settled law that actionable negligence can be based only upon a breach of duty owing by the one charged with negligence to the one injured, that it may be stated as an elementary principle in our juris-

prudence of the law of negligence. Again, it is an elementary principle of the law of negligence that no duty rests upon the owner of the premises to one, either a licensee or a mere trespasser upon such premises, as to the condition and safety of said premises when such person enters thereupon.

■ In the instant case, the allegations in the petition, to the effect that other employees of the Gravel Company had gone upon the premises, to perform duties for the Gravel Company, and that appellee knew, or should have known, of such fact, perhaps at least raises an issue of fact as to whether the status of appellant, on the occasion in question, was that of a licensee or trespasser, yet the legal effect of such status, under the facts alleged in this case, would not be different from that of a trespasser, in respect to the duty of protection owing appellant. As a licensee, appellee owed him no such duty of protection until it had knowledge of his danger, and no such knowledge is alleged. Wimberly et ux. v. Gulf Production Co. (Tex. Civ. App.) 274 S. W. 986; Kirby Lumber Co. v. Gresham (Tex. Civ. App.) 151 S. W. 847; Bennett v. Louisville & N. R. Co., 102 U. S. 577, 26 L. Ed. 235; Kruse v. Houston & T. C. Ry. (Tex. Civ. App.) 253 S. W. 623; McCoy v. Texas P. & L. Co. (Tex. Civ. App.) 229 S. W. 623; 9 R. C. L. 1208; City of Greenville v. Pitts, 102 Tex. 1, 107 S. W. 50, 14 L. R. A. (N. S.) 979, 132 Am. St. Rep. 843.

The trial court, in sustaining the special exceptions and the general demurrer, could have acted only on the theory that appellant was at most a mere licensee. If the facts alleged, as distinguished from the legal conclusions drawn by the petitioner from such facts, show that there exists a reasonable inference that the status of appellant was that of an invitee, then the court erred in sustaining a general demurrer and the special exceptions, having the force of a general demurrer. On the other hand, if the only reasonable inference to be drawn therefrom is that appellee's status was that of a licensee, then there was no error in the rulings of the trial court. Hence, the issue of this appeal is: Do appellant's allegations of fact fix his status, at the time of his injury, as that of an invitee upon appellee's premises, or as that of a licensee?

■ Appellant alleged that he was on appellee's premises, at the time of his injury, by an express invitation. This allegation is a legal conclusion, and is not such an allegation, the truth of which must be assumed as against a general demurrer, and there are no

facts alleged that would warrant the conclusion that there existed an express invitation for appellant to go upon appellee's premises for the purposes for which he had gone. Aside from this, a special exception to this allegation was sustained, because it alleged only a conclusion and did not state the facts, and appellant declined to amend the allegations. We therefore hold that the petition does not show that appellant went upon the premises, on the occasion in question, by express invitation of appellee. However, appellant would be an invitee, if the facts and circumstances alleged in the petition were sufficient to warrant a finding that there was an implied invitation to go upon said premises.

 We do not believe the allegations in the petition, relied on by appellant to show an implied invitation to use the platform on which is located appellee's electrical machinery and appliances, tend to show the existence of such implied invitation. An implied invitation to use the premises of another is shown by such acts or conduct of the owner which would lead another to believe that the use of the premises is in accordance with the design for which the place was adapted and allowed to be used in mutuality of interest. Words and Phrases, Third Series, vol. 4, p. 87. The facts alleged in the petition show nothing in the manner of the construction of the said platform that would even tend to indicate an invitation to any of the employees of the Gravel Company to make use of the same. The platform on which appellee's electrical equipment rests is supported by posts seven feet above the grounds, with no means furnished for reaching said platform, other than by climbing one of said posts. The platform is shown to be isolated from every other construction in the immediate vicinity; upon it is rested machinery known to be dangerous to approach. In fact, it seems to us that the idea of a stranger using such platform for his own purposes is clearly excluded by these facts. The fact that it might become necessary for some wires to be detached from the meter, in order that the Gravel Company might perform its work, is not deemed to have any potency as a circumstance to show such implied invitation.

We are of opinion that the allegations in appellant's petition, in respect to the issue of implied invitation, indicate, both by the alleged constructive design of the platform for use of the electrical machinery resting thereon, and the well-known fact that such machinery is at all times dangerous to any one

coming in contact with it, exclude the idea of any intention of appellee for any one, other than its employees, to make use of such platform for any purpose whatever.

 The alleged facts preclude the existence of any mutual interest, between appellant's employer and appellee, in the electrical machinery and appliances and the platform on which they rest. The mere fact that appellee found it necessary to construct a substation near Gravel Company's plant, in order to furnish appellant with the desired electrical power, does not tend to show mutuality of interest in appellee's substation. Corder v. Houston P. & L. Co. (Tex. Civ. App.) 38 S.W. (2d) 606; Galveston Oil Co. v. Morton, 70 Tex. 400, 7 S. W. 756, 8 Am. St. Rep. 611; Stamford Oil Mill Co. v. Barnes, 103 Tex. 409, 128 S. W. 375, 31 L. R. A. (N. S.) 1218, Ann. Cas. 1913A, 111; Blossom Oil & Cotton Co. v. Poteet, 104 Tex. 230, 136 S. W. 432, 35 L. R. A. (N. S.) 449; also authorities above cited.

 The conclusion is inescapable that appellant, at the time he was injured, did not occupy a higher position to appellee's premises than that of a mere licensee. When he went upon said premises on the occasion in question, he assumed, as a matter of law, all of the risks incident to his use of the premises in the condition he found them, and cannot be heard to complain that the premises were not reasonably safe for his use of them on the said occasion. See all authorities above cited.

Under this view of appellant's status, all questions of negligence alleged passes out of the case, and it necessarily follows that, in our opinion, the case should be affirmed, and it is so ordered.

Affirmed.

LOONEY, Justice (dissenting on rehearing).

Sustaining demurrers to appellant's petition, the court below dismissed this suit and we affirmed the judgment. On rehearing, I have reached the conclusion that we erred in affirming the judgment, and believe that the cause should have been remanded for trial.

The opinion by Chief Justice JONES sets out fully appellant's cause of action and, after discussing and disposing of a number of issues, finally reached the question as to the sufficiency of appellant's allegations to show that, at the time and under the circumstances of the injury, his status was that of an implied invitee. On this point, Judge JONES

says: "However, appellant would be an invitee, if the facts and circumstances alleged in the petition were sufficient to warrant a finding that there was an implied invitation to go upon said premises." After a short discussion, the conclusion was reached that the facts and circumstances alleged were not sufficient on this point, and it is from the latter conclusion that I dissent and, without a discussion, simply express the opinion that the allegations raised the issue of an implied invitation, and entitled appellant to have applied to his case the rules of law governing such status.

Dissenting opinion.