# Union Light, Heat and Power Company v. Lunsford, By His Next Friend.

(Decided December 3, 1920.)

## Appeal from Kenton Circuit Court.

1. Negligence—Children—Duty of Property Owner to Trespassing Children.—If a person knows that young children are in the habit of playing on his premises it is incumbent upon him to exercise care commensurate with the danger to which they may be exposed to protect them from dangerous places or instrumentalities on the premises.

2. Children—Negligence—Care to be Exercised to Protect From Electrical Appliances.—If there are on premises where children with the knowledge of the owner habitually play heavily charged electrical fixtures or wires the owner of the premises is under a duty to exercise the highest degree of practicable care to protect such wires or appliances so that the children will not be injured by coming in contact with them.

MAURICE L. GALVIN for appellant.

RICHARD G. WILLIAMS and O. M. ROGERS for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CARROLL—
Affirming.

This suit was brought in the Kenton circuit court by Lucius Lunsford, an infant between fourteen and fifteen years old, suing by his next friend, against appellant, Union Light, Heat and Power Company, to recover damages for personal injuries sustained by Lucius when his hand came in contact with a heavily charged electric wire used by the power company in the conduct of its business.

On a trial before a jury he recovered damages in the sum of $3,000.00, and the power company has prosecuted this appeal, asking a reversal upon two grounds, first, that the jury should have been directed by the trial judge to return a verdict for it, and, second, because of alleged error in the instruction defining the degree of care that must be exercised by the power company.

The facts of the case are substantially these: The power company owns a vacant lot of considerable size situated in a populous part of the city of Covington. This lot is bounded on the west by the buildings of the Advance Mill Company that front on Garrard street, on the south by Saratoga alley, on the east by Licking river and on the west by Eighth street.

Eighth street is unimproved and for many years had been used by the boys and children in the neighborhood

as a playground. On the property line of the power company's lot abutting on this street there was at the time of the accident a plank fence, but some of the planks in this fence had been torn or knocked down, leaving spaces in the fence through which boys might go from Eighth street into the lot. There was also an opening in this fence for a gate through which boys could go at their pleasure into the lot. The side of the lot fronting on Saratoga alley was not inclosed by a fence, and of course boys and children could go when they wanted to from the alley into the lot.

There is also abundant evidence to show that almost every day a crowd of boys came from Saratoga alley or Eighth street into this lot for the purpose of playing the different games and indulging in the various things that idle boys like to do. There was little if any effort on the part of the employes of the power company who occupied a building on this lot on Saratoga alley to interfere with the boys in their use of the lot as a playground, although it should be said that occasionally boys, and especially those of tender years, would be ordered out of the lot by these employes. There was not, however, any continuing or persistent or vigorous effort made to keep the boys out of or from playing in and about the lot although the superintendent and others of its employes were so located in the buildings of the company that they knew the boys used the lot every day.

The lot was also made especially attractive to boys by the presence of a large pit some twenty or thirty feet from the buildings of the Advance Mill Company. This pit had at one time been used as a gas tank and was about sixty feet in diameter and probably twenty feet deep. Water stood in it to the depth of several feet and in this water were frogs and turtles; old electric light bulbs that floated on the water were also thrown into it, and many of the boys made it a practice of standing around the pit and with gum shooters or flippers shooting at the glass bulbs, frogs and turtles. How attractive a place this would be to boys any person at all familiar with their tastes, desires and habits can easily understand. Indeed if the power company had established a place of amusement for children it could hardly have equipped it with more enticing objects than those to be found in this pit.

About ten feet from the edge of this pit nearest to the building of the Advance Mill Company and in the

corner of the lot joining this building and Saratoga alley the power company had its transformers, which were used to convert high tension electric power into low tension for the use of the Advance Mill Company plant. The heavily charged electric wires that run into these transformers carried more than 2,000 voltage, and these deadly wires were strung as they approached the transformers about three feet above the level of the ground.

The small plat of ground occupied by the transformers was inclosed by a close fence made of boards about eight feet high and twelve inches wide. This wide fence had been there a number of years and some of the planks had decayed and come loose from the strips to which they were nailed, one of these strips being about three feet from the level of the ground and about even with the wires before mentioned. The evidence shows that at least two and probably more months before the accident in question one of these planks nearest to the pit had come loose and fallen to the ground, leaving an opening into the space where the transformers were of about twelve inches in width, extending from the top of the fence to the ground.

On the day in question Lucius and other boys were playing in this lot, and while he was shooting at the frogs with his flipper or gum shooter one of the frogs jumped out of the pit and made its way into the inclosure where the transformers were. Lucius had shot at this frog two or three times before the frog got inside of the transformer fence, and when it had jumped inside the fence he went to the open space where the plank had fallen off and not thinking of or appreciating the danger reached inside with his hands and arms for the purpose of again shooting at the frog. When he did this his left hand came in contact with one of the heavily charged wires, from which the protective covering had either rotted or worn off, leaving the naked wire exposed, and as a result he sustained the severe and permanent injury to recover damages for which this suit was brought.

It should also be said that no notice or warning had ever been given to Lucius or any of the boys of the dangerous implements or appliances in this inclosure, and it does not appear that previous to this time any of the boys had ever been hurt by coming in contact with the wires. Nor is it shown that Lucius appreciated or understood the danger of coming in contact with these

wires. He probably knew, as most boys of his age living
in a city would, that a heavily charged electric wire would
be a dangerous thing for him to touch or handle or come
in contact with, but mere boyish knowledge of a danger
like this will not be counted such contributory negligence
on his part as would defeat an action for damages on
account of injuries sustained if, by accident or while en-
gaged in some youthful pleasure or amusement, he
should be injured by it.

The power company, however, knew how dangerous
was the place where these transformers and wires were,
and the necessity for keeping it well protected; it also
knew or will be charged with notice that the plank had
fallen down, because it had been off two months or more
and its employes were about the lot every day and so
close to the inclosure that they could not well escape ob-
serving the opening.

On these facts the argument is made for the power
company that Lucius, in the first place, was a trespasser
on the premises of the power company, and, in the sec-
ond place, as he was not injured by falling into the pit
or coming in contact with anything immediately connect-
ed with it, and this was the only thing about the place
that could be called an attractive nuisance, there could
be no liability on the part of the power company.

Technically and strictly speaking, Lucius and the
other boys using this lot as a playground were tres-
passers, but on account of their youth, the attractive and
enticing nature of the pit, and the continued and habitual
use of the lot as a playground with the knowledge and
at least tacit consent of the power company, these boys
occupied the attitude of invitees or licensees and the
power company assumed the duty of exercising care to
protect them from harm, commensurate with the danger
to which they might be subjected while on the premises.

We have written a number of cases on the subject
matter of this suit, among them Vonalmen's Admr. v.
City of Louisville, 180 Ky. 441; McMillan's Admr. v.
Bourbon Stock Yards Company, 179 Ky. 140; Lyttell's
Admr. v. Harlan Town Coal Co., 167 Ky. 345; Miller v.
Chandler, 168 Ky. 606; Meyer v. Union Light, Heat and
Power Co., 151 Ky. 332.

What was said in the Harlan Town Coal Company
case seems to be particularly pertinent and applicable
to the facts of this case, and so we will quote from it.
In that case as in this a boy was injured while on the

premises of the coal company and there as here the defense was that the boy was a trespasser and the coal company owed him no care except that applicable to trespassers, but the court said: ''The property owner may not be obliged to keep his eyes open to discover the presence of children on his premises, but when he does discover them habitually intruding at a place that is unsafe for children, the plainest dictates of humanity require that he should do something or say something to save them from probable injury or death.

''This is not a modification of the general rule announced in the cases cited that trespassing children and trespassing adults are to be treated alike, but is merely a new application of what is known as the 'attractive nuisance' doctrine, which, we think, may be well extended to embrace the case we have.  If a person, on his own premises, has an exposed place that is attractive to and at the same time dangerous for use by children, and he knowingly permits them, without objection or warning, to congregate or play about it, he must keep it in reasonably safe condition for the use to which children of tender years will put it.  Bransom v. Labrot, 81 Ky. 638; Union Pacific R. Co. v. McDonald, 152 U. S. 262, 38 Law Ed. 434.  This principle has been engrafted into the law as a humane exception to the general rule that the owner of premises is under no duty to make them safe for the use of trespassers or ordinary licensees.  Or, as said by this court in Indian Refining Co. v. Mobley, 134 Ky. 822:

'' 'A licensee in entering upon the premises of another does so at his peril, the owner of the premises being liable only for injuries resulting from willful acts. The only exception in the application of the rule announced is in that class of cases where one owning premises in a locality where children are apt to congregate places thereon something attractive to children and dangerous to them if meddled with, without taking steps to warn and keep the children out of danger.  In cases of this character, where a recovery has been allowed, it has not been upon the ground that the company has been guilty of any positive negligence, but because of the fact that the children injured are too young to appreciate the danger, and the law throws around such its protecting care because they are not able to take care of themselves, and imposes upon the owner of such premises the duty to take such reasonable precaution as the circumstances will admit of to protect them from injury while playing upon such premises.' ''

It is true, as argued by counsel, that there was nothing in or about the inclosure where the transformers were or connected with the transformers or wires that would be enticing or attractive to children and that the only especially enticing and attractive place on this lot was the pit itself and the objects found therein. But counsel overlook the important fact that this pit was only a few feet from the exposed, unprotected and deadly wires in the inclosure where the transformers were, and the further material fact that the boys were constantly playing and engaged in childish sports in all parts of the lot. These facts, well known to the power company, were more than sufficient to put it upon notice that at some time or in some way they might come in contact with these exposed wires.

In other words, when a person maintains premises that are habitually used as a playground by boys with his knowledge and tacit consent he will be charged with the duty of reasonably anticipating that they may come in contact with and be injured by some dangerous and exposed object or thing that he permits to remain on the grounds, although this object or thing may not in or of itself be enticing or attractive to children. And so if we should leave this pit and its attractions entirely out of view and look at the case as if this lot was used as a whole, as it was, for a playground it would not help the case for the power company. This pit was merely one of the attractions this lot afforded. The whole of it was a playground and all of it was used for one sport or another. We are therefore of the opinion that under all the facts and circumstances of this case the court properly submitted it to the jury.

The remaining question is the measure of care the power company was under in respect to so protecting these electric wires as that the children playing in the lot might not be injured by coming in contact with them. Counsel for the power company insists that it was only required to exercise ordinary and reasonable care under all the surrounding circumstances to keep these wires protected or so safeguarded as that the playing children might not come in contact with them, while, on the other hand, counsel for the boy contends that the power company was under a duty to exercise the highest degree of care practicable under the circumstances.

The trial court, adopting the view urged by counsel for the boy, gave to the jury this instruction: "If the

jury shall believe from the evidence that the abandoned gas container or pit, upon the premises, described in the evidence, was unusually attractive to children, and that before the accident to the plaintiff, mentioned in the evidence, children were attracted by it, and did, and were accustomed to go upon said lot and about the pit and play, and that the defendant knew thereof; and that the defendant maintained upon said lot near the pit electric wires and transformers, and that said wires were dangerous by reason of the high current of electricity carried upon them, or that the insulation upon one of the electric wires was defective and rendered contact with the wire dangerous, and that at the time of the accident or before the defendant knew, or by the exercise of the highest degree of care and skill which may be used under similar circumstances could have known thereof; and if the jury shall further believe from the evidence that at the time of the accident to the plaintiff one of the boards, constituting a part of the board fence enclosing the electric wires and transformers upon said lot, was broken, and that an opening in said fence was thereby left at such height and of such character as rendered the electric wires and transformers, enclosed by the fence, so accessible to children playing upon the lot and about the pit, that danger to them coming in contact with the electric wires and transformers, would reasonably be anticipated, and that such danger reasonably to be anticipated, if such there was, from said condition was, or by the exercise of the highest degree of care which may be used under the circumstances could have been, known to the defendant; and if the jury shall believe from the evidence that the defective insulation, if such there was, and the opening in the fence of the character hereinbefore required, if it was of that character, amounted to and was a failure on the part of the defendant to exercise the highest degree of care and skill which may be used under the circumstances to protect its electric wires and transformers from contact with children playing upon the lot, and that by reason of such failure the plaintiff, while playing upon said lot and in pursuit of a frog which had entered the enclosure, thrust himself into or through said opening in the fence and came in contact with the defendant's electric wire and was thereby injured, the jury will find for the plaintiff, unless the jury shall further believe as in the third in-

struction, in which event the jury will find for the defendant.''

In so instructing the jury the court, in our opinion, did not commit error. It is a familiar rule in the law of negligence that the care to be exercised must be commensurate with the danger, and this court in an unbroken line of decisions has held that persons engaged in the distribution of light and power by means of heavily charged electric wires must use the highest practicable degree of care to prevent injury to third persons or strangers who may come in contact with them. The instruction, in somewhat different form but in substantially similar words, presented this idea.

Illustrative cases on this point are: Macon v. Paducah Street Railway Co., 110 Ky. 680; Mangan v. Louisville Electric Light Co., 122 Ky. 476; O'Donnell v. Louisville Electric Light Co., 21 Ky. L. R. 1362; Lewis v. Bowling Green Gas Light Co., 135 Ky. 611; Union Light, Heat & Power Co. v. Young, 141 Ky. 805; Lancaster v. Central City Light & Power Co., 137 Ky. 365; Bowling Green Gas & Light Co. v. Dean, 142 Ky. 678; West Kentucky Coal Co. v. Key, 178 Ky. 220; Union Light, Heat & Power Co. v. Lakeman, 156 Ky. 37; Paducah Light and Power Co. v. Parkman's Admr., 156 Ky. 334.

It seems to us that the principle announced in these cases respecting the degree of care required of the power company should be applied to the facts of this case. There is no room or place for the adoption of the rule insisted on by counsel for the power company. If an electric company, as held in the cases cited, is under a duty to exercise at all times and all places the highest or utmost degree of practicable care it should certainly exercise that degree of care when its wires are at places where thoughtless and playing children may come in contact with them; distributors of electric power are placed in a class by themselves and from them a degree of care is demanded that is not exacted from others.

In many cases where it appeared that the children were injured or killed while playing on premises and a recovery was allowed or not depending on the facts of the particular case we have laid down the rule that the owner of the premises was only required to exercise ordinary or reasonable care, but in no one of these cases so holding was the injury caused by electric wires or appliances.

Wherefore the judgment is affirmed.