## JOHNS et ux. v. FORT WORTH POWER & LIGHT CO.

### No. 12311.

Court of Civil Appeals of Texas. Fort Worth.
April 26, 1930.

Rehearing Denied May 31, 1930.

Houtchens & Houtchens and J. H. Craik, all of Fort Worth, for appellants.

Cantey, Hanger & McMahon, of Fort Worth, for appellee.

BUCK, J.

Elijah Johns and wife brought suit against the Fort Worth Power & Light Company for the death of their son, Elijah, Jr., a boy fifteen years old past. The boy was killed by coming in contact with a high-powered wire on top of one of the company's towers in the eastern part of Fort Worth. Plaintiffs alleged that the place where the tower was located had been used for many years as a public and private play ground for negro children, before and after the erection of the tower. That the defendant was charged with knowledge of such use as a playground for such children, and knew of its danger to persons, and specially to children of immature age, if they should go up the tower and come in contact with the high-powered wires. The tower was alleged to be some 75 feet in height and from 15 to 20 feet square at its base, and became narrower as it approached the top, where it was about 6 feet square. The upright pieces of said tower were fastened together and braced by other steel pieces composing the braces holding said tower together; that at or near the top of said tower are extended certain cross-arms also constructed of steel, there being at the time hereinafter alleged several of said cross-arms extending out from said tower for a distance of about 3 feet on either side of same; that suspended from said cross-arms are certain insulators, and attached thereto are large and high-tension wires, there being six of said wires suspended from and attached to the cross-arms of said tower, three on each side; that on the corners or legs of said tower are attached steel piles or projections from the steel pieces forming one of the upright corners of said tower, placed thereon for the purpose of forming a ladder upon said tower; that said spikes, together with the braces forming said tower, formed a continuous ladder from a point about 3 feet from the ground to the top of said tower. That at the date and time hereinafter alleged, defendant transmitted upon and along said wires a great amount of high-tension electricity, and that by reason thereof said tower constituted a very dangerous place; that the amount of electricity in said wires was so great that it was unnecessary for persons to come in actual contact with the wires conducting such electricity in order to become

affected and electrocuted thereby; but that there were certain zones and distances from said wires, within which, under certain conditions, the effect of said electricity could be felt and within which it was very dangerous and hazardous to human life to come. That said tower was situated and located upon the ground, with all the equipments for the purposes herein referred to, and there were four legs to said tower and numerous braces about said legs, which braces were an attraction to children and other persons unaccustomed to the danger and hazards incident and connected with playing thereupon and unacquainted therewith, to go and play thereupon and thereabout, and great numbers of children, including Elijah Johns, Jr., would suspend swings in the way of ropes to said braces and legs of said tower, and said braces were at a sufficient height from the ground where said children could reach them, from 3 to 6 feet, and they did reach and catch hold of them and "chin" them. That the ground about and under said tower was reasonably level and by reason of such fact it afforded a place for children to play, and while they would play and have many games, such as marbles, under said tower and on the ground near by, and such other games as flying kites, and by reason of the construction of said tower, it was an attraction, particularly to the negro children accustomed to playing there. That by reason of the matters hereinbefore alleged, and by reason of the recent construction and use of the tower, it having been erected some eleven years ago, and by reason of the fact that the defendant had not warned the public and especially children of the danger connected therewith, said tower was especially calculated and did attract children and persons of tender years and lack of experience, and did attract plaintiffs' son.

That on or about February 21, 1925, said Elijah Johns, Jr., a boy then fifteen years of age, in keeping with a custom and with the custom of many other negro children, went down to the grounds around the tower to fly his kite, and the kite was caught in the wires extending from its top. That the boy climed up the tower, on the spikes attached to the same, and while reaching for his kite, ignorant and unadvised of the danger, was killed.

Plaintiffs alleged that said Elijah was an unusually bright boy and was in the eighth grade of the public school and was earning $75 a month by delivering papers.

Defendant answered by a general demurrer and a number of special exceptions, and specially pleaded that if Elijah climbed upon the tower referred to in plaintiffs' petition, and as a result of said climbing came in contact with the electric current, then defendant alleged that the act and conduct on the part of Elijah Johns, in climbing upon said tower and placing himself in a position of peril where he was likely to and did come in contact with the electric current, contributed directly and proximately to his injuries and death. That in climbing said tower the deceased did so, not because of any special attraction, but for the purpose of getting his kite.

The trial court, after the plaintiffs' evidence was concluded, and after argument by counsel, instructed the jury to return a verdict for defendant, and upon this verdict so rendered a judgment was entered for the defendant, and the plaintiffs have appealed.

The evidence of the injury and death of the deceased was given mostly by Glen Morgan, a negro boy 17 years old, who was the only one present at the time of the accident. He alleged that he and Elijah went down to the vicinity of the tower to fly their kites; that the ground underneath the tower had been used for a playground by the negro children in the eastern part of Fort Worth; that their ball game ground was opposite the tower and about 3 feet away. That the children often played upon and underneath the tower. That when Elijah's kite was caught on the wires at the top of the tower, he began to climb the ladder to extricate it; that he (the witness) climbed the ladder just under Elijah. That when Elijah got to the place where the kite was lodged and was swinging about 2 feet from the wire, he noticed Elijah reach out to get the kite, and that a great noise followed, like that made by an airplane, and it seemed to him that Elijah was drawn toward the wire and thrown over it. That he fell to the bottom of the tower, as also did the witness. That the witness got up and called to Elijah, but he did not answer. That he was dead.

### Opinion.

It was agreed in open court that the tower and wires were owned and under control of the defendant at the time of the injury to the deceased and the land upon which the tower was situated was the property of the Fort Worth improvement district No. 1, from which the defendant had procured the easement to erect the tower and put the line across the land. It is urged by the appellant that the negro children were attracted to and played around the tower prior to the accident without being injured. This is borne out by the evidence. That the tower because of its peculiar construction and the ladder leading up to the top constituted an implied invitation to children of immature years to climb the same. That there were no signs or guards about the tower to warn children of the dangers incident to climbing it. That at the time of his injury the deceased, accompanied by another boy, had climbed the tower to a height of 60 feet for the pur-

pose of extricating his kite, and the testimony being uncertain as to whether the deceased touched the wire or merely came within the electrical zone surrounding the same, there was sufficient evidence to support a finding that the deceased was allured to climb the tower because of the attractive nature and easy accessibility of the same, and that the trial court erred in directing a verdict for the defendant.

As stated by appellants in their brief, the doctrine of "attractive nuisance" is too well established in the judicial system of Texas to require a citation of authorities, and the only question before this court is whether that doctrine of negligence can be made the basis of legal liability upon the part of the defendant under the pleadings and evidence of this case. The rule has been announced by the Supreme Court of this state that the doctrine is not limited to "turntable" cases, but is applied in all cases where children of tender or immature age are impliedly invited by an "attractive nuisance" to place themselves in a position of danger.

In McCoy v. Texas Power & Light Co., 239 S. W. 1105, 1108, by the Commission of Appeals, approved by the Supreme Court, it is said:

"We are not intending to extend the doctrine as set out in the 'turntable' cases, but simply to insist that the doctrine therein stated is not limited to turntables, but is intended to be applied in all cases where children of tender or immature years are impliedly invited by an 'attractive nuisance' to place themselves in a position to be injured. The petition in this case stating, in our opinion, a legal cause of action and stating such facts as entitled the plaintiff to a hearing on the merits, we hold that there was error in sustaining the demurrer and dismissing the case. In order that the authority for this holding may be apparent, we quote from the following cases:" (Here follows a summary and discussion of prior authorities.)

In the McCoy Case it was alleged that the tower constructed, as this one was, was especially attractive to children, and there was no allegation that the boy who was killed attempted to climb the tower for any special purpose other than a boyish desire to investigate the construction, which might be termed an attractive nuisance. In the McCoy Case the court further said:

"The plaintiff's pleadings set out a description of the electric light tower that presents a picture wholly different from the ordinary timber telegraph or electric light pole and undoubtedly raises the question of whether or not it was an attractive nuisance, and one that the jury should have passed on under appropriate instructions."

In the McCoy Case the boy was fourteen years of age, at least a year younger than Elijah Johns at the time of his death. In the McCoy Case the court further said:

"It is true that the defendant is engaged in a legal business and in the service of the public, and that the public is interested in its successful operation. It is also true that, as such servants of the public, the public is interested in seeing that its business is not unlawfully interfered with; but the public is yet more intensely interested in the preservation of human life and in seeing that these agents of commerce do not become carriers of death. It is true that science has succeeded in harnessing the tremendous power of electricity, and it is also true that no method has been discovered whereby this power can be confined to the wire which is its conductor, as it is utterly impractical to attempt to insulate the wires carrying the tremendous voltage amounting to 30,000 or 60,000 volts. The public knows that it is dangerous to touch a live wire, but very few know that there exists danger of death from this powerful current by near approach to the wire so charged, without actually coming in contact with the wire. Only those who are engaged in the business, and those who have stood beside some inanimate form whose scorched and burned flesh bears mute evidence to its tremendous power, know this. Because it is a legal business and in the service of the public should not, and does not, release the defendant from being subject to all the requirements of the law, that it conduct that business in such manner that will result in reasonable protection to those on its premises either on business or by invitation, express or implied.

"We therefore recommend that the judgments of the Court of Civil Appeals [229 S. W. 623] and of the district court be reversed, and that this cause be remanded to the district court for trial."

In Johnson v. Atlas Supply Co., 183 S. W. 31, 33, decided by this court, opinion by Chief Justice Conner, the petition alleged that the boy killed was attracted to the premises by a little girl about his own age, and also on account of the attractive machinery which was kept upon the premises, and further alleged that the injury occurred when the little girl brushed against a heavy wheel, which was standing upon its edge, causing it to fall over and upon the boy. The petition alleged that the injured child was attracted to the premises by both the machinery and little girl, and it also alleged that the children were playing "hide and seek" at the time of the injury, and that the little girl had hid behind the wheel when she accidently pushed it over upon the little boy.

In the last-cited case this court held, in line with other authorities, that the owner

of the property is under the same liability for failure to guard against injuries reasonably to be contemplated to implied invitees as to express invitees. That an "implied invitation" to plaintiff, a boy eight years old, to come upon the premises, cannot be drawn from the fact that the owner maintains thereon things ordinarily in existence and use, such as rivers, creeks, ponds, wagons, axes, plows, woodpiles, haystacks, and the like, or even an attractive maiden or daughter of about the same age as plaintiff. Judge Conner quotes from S. A. & A. P. Ry. Co. v. Morgan, 92 Tex. 98, 46 S. W. 28, as follows:

"Where, however, the owner maintains upon his premises something which on account of its nature and surroundings is especially and unusually calculated to attract and does attract another, the court or jury may infer that he so intended and hence invited him. Where one exhibits on his own land, near where children are likely to be, pictures or unusually attractive machinery, etc., he can expect no other result than that it will appeal to the known instincts of a child of immature judgment and cause him to venture thereon, just as the dog was drawn into the baited trap by the scent of meat."

In Consolidated Electric Co. v. Healy, 65 Kan. 798, 70 P. 884, 885, by the Supreme Court of Kansas, the minor child of plaintiffs was killed while climbing over the side of a viaduct, where he came in contact with electric wires owned by the defendant power company. It seems that the viaduct was a part of a city street and that boys were accustomed to climb over the rail to braces and crosspieces which protruded two or three feet out from the floor of the driveway. The electric wires were supported by short extension beams which were fastened to the floor of the viaduct, and the insulation had become worn off in places making it dangerous for any one who might come in contact with the same. The trial court directed a verdict for the defendant upon the theory that the boy was not attracted by the dangerous wires and therefore the doctrine of "attractive nuisance" could not be applied under the facts. In reversing the judgment the Supreme Court of Kansas had this to say:

"The matter principally discussed is the question of the company's liability under the circumstances stated. As to the boy, who was not at the time on the highway proper, but who was engaged in a dangerous sport immediately outside of it, was the company negligent in maintaining its wires in an uninsulated condition, where he was liable to come in contact with them? To our minds, there can be no doubt as to the answer. It was liable. To an adult it might not have been. To a small boy, in the buoyancy of sport, and lacking the intelligence and dis-

cretion of older years, it was liable, in view of the fact that it knew that children of his class were in the habit of venturing in dangerous proximity to its negligently kept wires. The place where the boy met his death was one of those denominated in the books 'attractive nuisances,' the keepers of which, according to those decisions which we regard, as the sounder exposition of the law, are liable to one who, without inculpating fault on his part, is injured thereby. It is true, the company did not maintain the bridge and the railing and the elevation above ground, constituting an attractive climbing place for boys, and it may be that its wires were not themselves attractive playthings for the boys, but it maintained them in such immediate proximity to that which was attractive as to constitute them an integral part of the whole. It put its wires within the attractive environment. It identified itself in that way with the attractive place. If one maintains a dangerous instrumentality on his own premises, immediately against the premises of another, and within the sphere of the attractive influence of something on the latter, and a third one, venturing on the latter, is injured by coming in contact with the former, he would seem entitled to a recovery; that is, assuming the necessary knowledge to charge the derelict party. The electric company had knowledge in this case. Its counsel attempt to explain that it had not. But it had. We have gone carefully through the evidence, and are convinced. The principle applicable to this case has been several times declared in this state. It was done in the recent cases of Price v. Water Co., 58 Kan. 551, 50 P. 450, 62 Am. St. Rep. 625, and Biggs v. Barb Wire Co., 60 Kan. 217, 56 P. 4, 44 L. R. A. 655. The subject has been thoughtfully considered in the second edition of Thompson on Negligence (volume 1), under the head of 'Injuries to Children from Defects in Premises,' beginning with section 1024.

"It is immaterial that the viaduct railing and its elevation above ground may not have been dangerous. They probably were, but for reasons peculiar to themselves. The boy did not come to his death because of dangers incident to the mere act of climbing. Nor is it material that the company's wires were not attractive. The attractions of the viaduct railing as a place for sport, and the defectively insulated wires, as instrumentalities of danger, were united together as a whole. We assume that the city is not liable, but, if it were charged with liability, it would be no answer to it to say it did not furnish the element of danger. It would be sufficient to reply that it furnished the attraction to entice into danger. * * * It is sufficient to reply that it furnished the danger to combine with the attraction. It could have neutralized the harmful ingredient

of attractiveness in the compound by guarding against the danger, and to require it to do so is not to impose upon it any greater burden than though it were responsible for both the hurtful constituents."

In Thompson v. Alexander Cotton Mills Co., 190 Ala. 184, 67 So. 407, 410, Ann. Cas. 1917A, 721, an eight year old boy was killed when he fell into a pool of hot water which collected from the discharge of a boiler from a cotton mill. The hot water was situated outside of a square, where children of the employees often played, which was formed by the mills and equipment on one side and the houses of the workers on the other. The evidence showed that the hot water pools were not easily accessible on account of a high bank, and briars which practically surrounded it, and further showed that the pools were anything but attractive to children. The deceased fell into one of the pools of hot water when he and other boys were attempting to throw stones into an exhaust pipe. The case lays down the rule that the dangerous instrumentality causing the injury need not in itself be attractive or the cause of the injured child being in the vicinity of the danger where the dangerous agency is left exposed in the immediate vicinity of a place where children are accustomed to resort to play. The case quotes from Thompson on Negligence, § 1030, as follows:

"We now come to a class of decisions which hold the landowner liable in damages in the case of children injured by dangerous things suffered to exist unguarded on his premises, where they are accustomed to come with or without license. These decisions proceed on one or the other of two grounds: (1) That, where the owner or occupier of grounds brings, or artificially creates, something thereon, which, from its nature, is especially attractive to children, and which, at the same time, is dangerous to them, he is bound, in the exercise of social duty and the ordinary offices of humanity, to take reasonable pains to see that such dangerous things are so guarded that children will not be injured by coming in contact with them. (2) That, although the dangerous thing may not be what is termed an 'attractive nuisance' (that is to say, may not have especial attraction for children by reason of their childish instincts), yet where it is so left exposed that they are likely to come in contact with it, and where their coming in contact with it is obviously dangerous to them, the person so exposing the dangerous thing should reasonably anticipate the injury that is likely to happen to them from its being so exposed, and is bound to take reasonable pains to guard it, so as to prevent injury to them."

In Street's Foundations of Legal Liability. p. 160, it is said:

"Liability in the turntable cases is frequently put upon the ground of implied invitation to children to come upon the premises in order to play there; the invitation being supposed to arise from the attractive nature of these dangerous engines. This hypothesis is hatched up to evade the obstacle which arises from the fact that the plaintiff is a trespasser. But it is as unnecessary as it is inadequate and artificial. Liability is to be ascribed to the simple fact that the defendant, in maintaining a dangerous agent from which harm may, under the particular conditions, be expected to come, has the primary risk, and must answer in damages, unless a counter assumption of risk can be imposed on those who go there to play."

In Fort Wayne & Northern Indiana Traction Co. v. Stark, 74 Ind. App. 669, 127 N. E. 460, 461, a nine year old boy was killed when he came in contact with an electric wire, from which the insulation had worn off, while climbing a tree. The tree was located in a neighborhood where there were many children, and others in the vicinity had noticed a flash emanating from the exposed wire when it rubbed against the branches of the tree. The defendant contended that the wire was not attractive and that the boy was a trespasser when he started to climb the tree. The court said:

"It is the contention of appellant that appellee was a trespasser; that the wire in controversy was not a nuisance calculated to attract small children, and that, therefore, there can be no recovery. In other words, it is appellant's contention that, if it is liable to appellee for the injuries complained of, it must be upon the theory laid down in what is termed the 'turntable cases.' It is not the law, as assumed by appellant, that one who maintains premises on which a dangerous thing is suffered to exist is not liable for injuries thereby resulting to children, unless such instrumentality is what is termed an 'attractive nuisance.' In 1 Thomp. Neg. 944, the author, in discussing the liability to children of one who suffers a dangerous agency to exist on his premises, correctly states the law as follows:

"'Although the dangerous thing may not be what is termed an attractive nuisance— that is to say, may not have an especial attraction for children by reason of their childish instincts, yet where it is so left exposed that they are likely to come in contact with it, and where their coming in contact with it is obviously dangerous to them, the person so exposing the dangerous thing should reasonably anticipate the injury that is likely to happen to them from its being so exposed, and is bound to take reasonable pains to guard it so as to prevent injury to them.' (Citing authorities.)

"It follows that if in the case at bar the

improperly insulated wire, constructed, as it was, through the branches of the small tree, was obviously dangerous to persons coming in contact therewith, and if it can be said that appellant should reasonably have anticipated that children in their play would climb into the tree, and thus be exposed to the danger, then appellant would be liable to appellee for the injuries sustained, even though appellee was at the time a trespasser. It is not therefore necessary to decide whether appellee was or was not a trespasser at the time he was injured.

"The question presented by this appeal, though one of first impression in this state, has frequently been determined by the courts of appeal in other jurisdictions. The conclusion * * * we approve, is well stated in a valuable text on the law of electricity (Curtis' Law of Electricity, § 512) in the following language:

" 'An electric company, maintaining a dangerous wire through or near a tree, is bound to anticipate that persons may lawfully climb the tree, and it is required to exercise due care to prevent injury to such persons from its wire. * * * The courts recognize that children are apt to climb trees, and impose upon electric companies the burden of using due care to keep their high tension wires insulated in places where children when climbing a tree will come in contact with them.'

"We hold that under the facts set forth in appellee's complaint, and as shown by the evidence in this cause, appellant should have anticipated that children would climb into the tree, through the branches of which it had stretched its wire, and that the maintenance of such wire with defective insulation was a breach of duty for which it was answerable to appellee in damages. (Citing numerous authorities.) Judgment affirmed."

In the case of McKiddy v. Des Moines Electric Co., 202 Iowa, 225, 206 N. W. 815, 818, a boy was electrocuted when he climbed a pole bearing electric wires which was situated in the immediate vicinity of a playground. The Supreme Court of Iowa said:

"In the foregoing we have not attempted a conclusive recital of the matters which are proper to be considered in determining whether or not the 'attractive nuisance doctrine' is applicable. Admittedly, appellee's intestate was technically a trespasser upon appellant's property. Unless the attractive nuisance theory is applicable in this case, appellant cannot be held liable, and its motion for a directed verdict, on the ground that appellee's intestate was a trespasser, should have been sustained. There is no claim or proof that appellant acted wantonly or willfully in causing the injury to appellee's intestate.

"Does the case come within the rule of an attractive nuisance? There can be no question that the pole in question, bearing a large number of wires carrying an electric current of high voltage, was a dangerous instrumentality. It was such an instrumentality that the city ordinances of the city of Des Moines required that the pole should be plainly marked with the word 'dangerous.' The ordinance was mandatory, whether the pole was located on the owner's premises, or on a public highway, or elsewhere.

"In the case at bar, we have a situation where the wires of appellant, bearing a high and dangerous current of electricity, were placed on the cross-arms of a pole located on an uninclosed tract of land in close proximity to a public park, and with no marks separating the tract upon which the pole was located, from the park. Aside from this, the pole was located close to the river bank, where the public frequently passed up and down the river. All of this was in the heart of the largest city in the state.

"Under the record, there can be no doubt that appellant was fully chargeable with notice of the situation, and that children played in the immediate vicinity of this pole, and were passing up and down the river next to it frequently. There is no question but that the pole was maintained in direct violation of the ordinance regarding a warning sign thereon. The pole was so located and equipped that a jury might well have found that it was naturally attractive to a boy of 12 or 13 years of age. Located upon the edge of a river, where a more extended view up and down the river could be obtained from the cross-arm, as well as a view over a portion of the city, it cannot be said that a jury could not regard it as 'an allurement' to an active and ambitious boy, possessed of the normal propensities incident to childhood. At a point 25 feet up the pole were the convenient cross-arms, affording an opportunity for an inviting seat of observation, and upon the pole itself from a point 18 inches above the ground, extending to the cross-arms, was a conveniently arranged ladder for no other apparent purpose than to enable a person to climb to the cross-arm. A jury could find that here was 'an implied invitation' to a child of tender years to experiment. All of this maintained without a semblance of sign or notice that any danger lurked about the premises or was hidden in the wires located on the cross-arm. It was for the jury to say, under all of the facts and circumstances, whether or not appellant was negligent in maintaining this instrumentality at the place and in the manner in which it existed.

"Again, under the entire record in the case, it was a question for the jury to

determine whether appellee's intestate was of such age, experience, intelligence, and knowledge that he knew and appreciated the danger in climbing the pole in question, and was guilty of contributory negligence.

"The court did not err in overruling appellant's motion for a directed verdict upon the several grounds urged therein."

In Union Light, Heat & Power Co. v. Lunsford, 189 Ky. 785, 225 S. W. 741, 744, a fourteen year old boy was injured by coming in contact with electric wires while upon the premises of the power company. The evidence showed that there was a small pond situated upon the premises of the defendant where the plaintiff, together with other boys, often resorted to shoot frogs and old light bulbs with various weapons used by boys of that age. The electric wires and transformers were situated inside an inclosure which was surrounded by planks, and the testimony showed that one of the planks had fallen down, but that there was nothing attractive about the transformers or the planks surrounding them. Upon the occasion of his injuries, plaintiff had chased a frog from the pool to the vicinity of the inclosure, and, when the frog hopped in the opening made by the fallen plank, plaintiff put his arm into the opening in an attempt to catch the frog and came in contact with one of the wires. The case went to the jury upon the theory of an attractive nuisance and a verdict rendered for the plaintiff. On appeal, the defendant contended that the evidence showed that the boy was not allured to the transformer and wires because of their attractive nature, and that the same were not attractive, but instead was attracted to the pond, and, not having fallen in the pond or injured thereby, the doctrine of attractive nuisance could not be applied. In replying to this contention, the appellate court spoke as follows:

"It is true, as argued by counsel, that there was nothing in or about the inclosure where the transformers were or connected with the transformers or wires that would be enticing or attractive to children, and that the only especially enticing and attractive place on this lot was the pit itself and the objects found therein. But counsel overlook the important fact that this pit was only a few feet from the exposed, unprotected, and deadly wires in the inclosure where the transformers were, and the further material fact that the boys were constantly playing and engaged in childish sports in all parts of the lot. These facts, well known to the power company, were more than sufficient to put it upon notice that at some time or in some way they might come in contact with these exposed wires.

"In other words, when a person maintains premises that are habitually used as a play-ground by boys with his knowledge and tacit consent, he will be charged with the duty of reasonably anticipating that they may come in contact with and be injured by some dangerous and exposed object or thing that he permits to remain on the grounds, although this object or thing may not in or of itself be enticing or attractive to children. And so, if we should leave this pit and its attractions entirely out of view and look at the case as if this lot was used as a whole, as it was, for a playground, it would not help the case for the power company. This pit was merely one of the attractions this lot afforded. The whole of it was a playground, and all of it was used for one sport or another. We are therefore of the opinion that under all the facts and circumstances of this case the court properly submitted it to the jury."

In Flippen-Prather Realty Co. v. Mather (Tex. Civ. App.) 207 S. W. 121, the appellants permitted a well, 24 feet deep, to be exposed, unfenced, in the near vicinity to a school. The block where this well was located was adjacent to a path used by the school children, and along which said children passed daily. The Mather child fell in the well and was drowned. It was alleged that the well was an attractive nuisance, that children were attracted to it for the purpose of gathering flowers, a great many of which grew near it. The Dallas Court of Civil Appeals affirmed a judgment for plaintiffs and the Supreme Court refused a writ of error. The court held that the evidence was sufficient to sustain the conclusion of the jury that children had been playing around this well for years, and said well was peculiarly attractive to small children.

In the foregoing we have cited most of the cases relied on by appellant, and we think that such cases present the contention of appellant as fully as possible.

In Blossom Oil Co. v. Poteet, 104 Tex. 230, 136 S. W. 432, 433, 35 L. R. A. (N. S.) 449, the Supreme Court of Texas held that in an action for injuries to a young child by being caught in a conveyor in defendant's cotton seed oil mill, the evidence showed that the child was not attracted to the conveyor by childish interest or curiosity. The evidence showed that the father of the child was an employee of the cotton mill, and that his wife went to the place of employment to take her husband's dinner. That she was accompanied by the child. While the husband was eating his dinner his wife attempted to perform his duties. It appears that the cotton seed had piled up over the conveyor, and the father went to his wife's assistance, and the little girl followed him and in doing so ran over the conveyor and was injured. The court, in an opinion by Judge Ramsey, said:

"It reasonably appears from this statement, and is rendered more certain by the evidence,

that the child Gracie was not at the mill at the time she received her injuries because allured and attracted there by reason of the fact that it appealed to her childish curiosity and interest, but that, wholly aside from any attractive quality of the place, she was carried there by her mother without invitation, express or implied, wholly as a matter of convenience or voluntary choice on her part. We may therefore at once dismiss the view of the attractiveness of the place as having no proper place in the case, and as furnishing of itself no basis of recovery."

In M., K. & T. Ry. Co. v. Moore, 172 S. W. 568, 570, by the Dallas Court of Civil Appeals, a little boy six and one-half years of age was drowned in a reservoir belonging to the railroad company. The reservoir was fenced and the ground leading up to the water rose from the fence up to the reservoir. There were several planks off of the fence and the child entered the premises through this opening. The court held that the reservoir was attractive to people generally and especially to children. That a great many persons would go near the reservoir to view it, especially on Sunday afternoon, but the evidence did not show that any of such persons went on the inside of the fence. That a number of children, however, prior to the death of the deceased, went on the inside of the fence playing near the edge of the water. The court said:

"The doctrine is fundamental that, in action to recover damages for injuries to or the death of children, as in cases where damages are sought to be recovered for the death or injuries to adults, there can be no recovery unless the defendant has been guilty of a breach of duty; but, as suggested in the case of City of Indianapolis v. Emmelman, 108 Ind. 530, 9 N. E. 155, 58 Am. Rep. 65, this fundamental fact is sometimes lost sight of, and 'in dealing with cases which involve injuries to children, courts and juries have sometimes strangely confounded legal obligation with sentiments that are independent of law.' Among the authorities, however, there is quite a conflict as to what the duty of a railway company is to children who come upon its premises as trespassers or mere licensees. But Mr. Elliott in his work on Railroads, says that he believes—

" 'The true rule to be that, although the age of the child may be important in determining the question of contributory negligence or the duty of the company after discovering him, the company is, in general, no more bound to keep its premises safe for children who are trespassers, or bare licensees not invited or enticed by it, than it is to keep them safe for adults.'

"Clearly the correct conclusion to be drawn from the adjudicated cases and elementary works on the subject is that the owner who has neither expressly nor impliedly invited the public to come upon his premises is under no legal obligation to keep them free from pitfalls or in a condition of safety for these persons, whether adults or infants, who in the pursuit of his own pleasure or convenience go upon or pass over such premises, even though it be with the acquiescence of the owner.

" 'The licensee takes his license subject to its concomitant perils, and the licensor, as a general rule, owes him no duty except to refrain from willfully or wantonly injuring him, or to exercise ordinary and reasonable care after discovering him to be in peril.' Elliott on Railroads (2d Ed.) § 1250."

The court held that the defendant was not liable and reversed the judgment of the Court of Civil Appeals and of the trial court and rendered judgment for the defendant.

In City of Greenville v. Pitts, 102 Tex. 1, 107 S. W. 50, 14 L. R. A. (N. S.) 979, 132 Am. St. Rep. 843, Pitts was a peace officer of the city of Greenville, and in order to watch a room where he suspected some gambling had been going on, he got up on top of a one-story building. He talked with the mayor about this, and told the mayor that he thought he had better get the identification of more participants in the gambling game before he made complaint, and the mayor agreed with him. Thus he had been up on this roof a number of times for the same purpose. He came in contact with an electric wire belonging to the city, from which the insulation had worn off. The court held that plaintiff, if not a trespasser, was no more than a licensee, under an implied license. That he was not entitled to recover, inasmuch as the defendant owed him no duty to maintain its lighting system so as not to injure him while climbing on top of one of the buildings. That the right of plaintiff to recover was not affected by the fact that he was an officer of the city and engaged in the discharge of his duties; nor that the effort to do so was disclosed to and approved by the mayor of the city.

In Dobbins v. M. K. & T. Ry. Co., 91 Tex. 60, 41 S. W. 62, 38 L. R. A. 573, 66 Am. St. Rep. 856, the Supreme Court held that a railroad company was not liable for the death of a child drowned by falling into a pool of water allowed to accumulate in a ditch on defendant's right of way. That the law imposes no duty upon the owner of land to use care to keep his property in such condition that persons going thereon without his invitation may not be injured, whether the injury be to an infant or to an adult.

In Wimberly v. Gulf Production Co., 274 S. W. 986, by the Galveston Court of Civil Appeals, a young man eighteen years old was fatally injured while using, without express permission, one of the baths provided for the use of the defendant company's employees. While using this bath, young Wimberly attempted to strike a match, and an explosion

followed and he was killed. The evidence showed that many of the men and boys not employed had used the baths prior to this accident, though without any express permission of the company or of its employees. The court held that a bathhouse like that furnished by the defendant company was not an attractive nuisance to a boy eighteen years old, and that such a boy, entering defendant company's shower bathroom without permission and for his own pleasure, was a trespasser; that an implied invitation to enter premises does not exist, in the absence of some relation which inures to the mutual benefit of the owner and the person so entering, or to the owner alone; that the owner of a shower bathroom, created for the use of its employees, was not required to make it safe for the use of one therein on his own pleasure, not connected with the owner's business.

In Dudley & Orr v. Hawkins, 183 S. W. 776, by the El Paso Court of Civil Appeals, suit was filed for personal injuries shown to have been incurred to a boy fourteen years of age, who, with companions, went upon defendant's quarry, and stole a large can of blasting powder, concealing himself at the time of the offense from the defendant's watchman. The powder was a long distance from a sand pile on the premises about which children were accustomed to play, and the boy had never before been in the locality where he discovered the powder. In lighting small handfuls on burning grass, the whole of the powder was exploded and the boy was injured. It was held that while a landowner who leaves unguarded dangerous machinery attractive to children may be liable for injuries received by the children, though they were on the premises without permission, yet defendant was not liable, for it could not be foreseen that children would sneak upon its premises and purloin explosives. That a boy fourteen years of age, and who appreciated the danger of explosions, jumping back when he ignited handfuls of the powder, must be held to be guilty of contributory negligence.

In Burnett et ux. v. Fort Worth L. & P. Co., 102 Tex. 31, 112 S. W. 1040, 19 L. R. A. (N. S.) 504, in an opinion by Chief Justice Gaines, the Supreme Court held that the light company was not liable for the death of a twelve year old negro boy, who had gone up on top of a building, without the knowledge and without the express or implied consent of the light company, and had come in contact with a guy wire which had become charged with electricity. The court said, quoting from the headnotes:

"The negligence of defendant must be a default in some obligation to the person injured, whether it consists in the omission of a statutory duty or one required by common law."

It has been held by numerous decisions that a child under the age of seven years is presumed not to have discretion such as will enable it to avoid danger or dangerous places, and that as to children between the ages of seven and fourteen years, it is a question of fact as to whether they possess such discretion, and that as to children over fourteen years of age, the presumption is that they have such discretion. The evidence in this case shows that the boy was fifteen years of age past, and that he was in the eighth grade at school and had been carrying or delivering papers and making $75 a month.

We conclude the pleadings and the evidence below made out a case for the jury. We do not think plaintiffs' right to recover is precluded by the fact that the evidence shows that the special purpose which induced the boy to climb the tower was to extricate his kite. The fact that the negro children had habitually played in the vicinity of and on this tower, and that such tower constitutes an attractive nuisance (see McCoy v. Tex. Power & Light Co. [Tex. Com. App.] 239 S. W. 1105), which was reasonably calculated to attract children to its vicinity, and had so attracted them for many years, was pleaded and sustained by the evidence. The tower was not only peculiarly attractive to boys of immature age by reason of its construction, but we think the fact that steps were placed thereon, so that boys could easily and conveniently climb it, made it more attractive, and we think that, under all the circumstances, the defendant should have anticipated that some boy would have climbed it, either for the purpose of extricating a kite, or for some other youthful purpose. See Johnson v. Atlas Supply Co. (Tex. Civ. App.) 183 S. W. 31; Consolidated Electric Co. v. Healy, 65 Kan. 798, 70 P. 884, 885; Thompson v. Alexander Cotton Mills Co., 190 Ala. 184, 67 So. 407, Ann. Cas. 1917A, 721; McKiddy v. Des Moines Electric Co., 202 Iowa, 225, 206 N. W. 815, 818; Union Light, Heat & Power Co. v. Lunsford, 189 Ky. 785, 225 S. W. 741, and other cases cited. We think the cases cited by appellee have each some feature distinguishing it from this case.

We conclude that the trial court erred in instructing a verdict for the defendant, and, accordingly, the judgment of the trial court is reversed, and the cause remanded.