**CORDER et ux. v. HOUSTON LIGHTING & POWER CO.**

No. 9495.

Court of Civil Appeals of Texas. Galveston.

Feb. 13, 1931.

Rehearing Denied March 26, 1931.

W. P. Hamblen and Phil D. Woodruff, both of Houston, for appellants.

Baker, Botts, Parker & Garwood, of Houston, for appellee.

### PLEASANTS, C. J.

This suit was brought by appellants to recover damages suffered by the death of their minor son, which they allege was caused by the negligence of appellee. Plaintiffs' petition alleges the following facts, in substance, as the basis for their cause of action:

"The defendant, Houston Lighting & Power Company is engaged in the manufacture and transmission of electricity and electrical power in Harris County and particularly in the City of Houston, and in the operation of its business, maintained a transmission line across a tract of land which was within the city limits of the City of Houston and which is near a thickly settled residential section. For a number of years prior to April 18, 1929, children had played upon this tract. The transmission line consisted of steel frame towers about sixty-five feet high which were about twelve feet at the base and tapered as they approached the top to about three by seven feet. Upon these towers were strung heavy copper wires known as high tension lines through which the electricity was transmitted. On one of the upright pieces or legs of the towers there was a ladder formed by bolts projecting on both sides of the leg so that a continual ladder was formed beginning a few inches from the ground and continuing to the top of the tower.

"That on, to-wit, the 18th day of April, A. D. 1929, plaintiffs' son, Doyle Corder, was a boy about sixteen years of age, and that on said date plaintiffs' said son had gone to said tract of land where he and a great number of other children had been accustomed to go and play as above stated, and after picking some berries, had started across said tract toward Plum Creek to play on a flat boat which he and some of his companions had built and were keeping in said creek; that he became attracted by the condition of said tower, as above set out, and entered upon the land immediately along and under the defendant's power line, and without any notice or knowledge of the probability of danger by reason of the existence of said danger zones as above set out, and having no notice or reason to believe that there was any probability of danger upon said tower unless he came in actual contact with said wires above described, ascended said tower upon the steps or ladder upon the corner of said tower as above described, and that while so ascending same he came within said danger zone above described, and without touching any of said wires or coming in contact therewith that he received a great and severe electrical shock causing him to fall from the position in which he was standing upon said tower, to the ground, from which place he was later carried to a hospital and there died upon said date, after great pain and suffering. * * *

"That the defendant was negligent in constructing and maintaining said tower and transmission lines in the manner above described and in not properly insulating said wires to prevent the escape of electricity therefrom, and in permitting said electricity to escape from said wires in such a way as to become dangerous to the lives of people in and about said tower, and also in constructing and maintaining said tower in such a manner as to constitute an attractive nuisance, it being an attraction and invitation to children and people of immature years and inexperience, and in not guarding said tower in such a manner as to prevent same from being used by children, and in not warning the public, and persons rightfully upon said premises, of the dangers incident to using said tower, and of the existence of said danger zone, above described, and of the probability of injury by coming within such zone, and in permitting electricity to escape from said wires and to come in contact with plaintiffs' son, and of thereby inviting persons and children to use said tower and climb upon same, and that the negligence of defendant in each and all of these said respects was the proximate cause of the death of plaintiffs' said son, as above described."

The defendant answered by general demurrer and general denial, and specially pleaded that the deceased was a trespasser upon its premises at the time he received his fatal injuries, and that defendant owed him no duty to have the premises safe for his use.

It further specially pleaded contributory negligence of the deceased.

The case was tried with a jury in the court below, but, after hearing all of the evidence, the court instructed the jury to find a verdict for the defendant, and upon the return of such verdict, rendered judgment accordingly.

There is no conflict in the evidence upon any material issue in the case. The deceased met his death at the time, place, and in the manner pleaded. Plaintiffs pleaded that at the time deceased received his fatal injury the boy was 16½ years old and was bright, intelligent, and capable. The testimony of the deceased's father shows that deceased was very intelligent, was 6 feet in height, and weighed 160 pounds. He was the oldest child of the family of eight children, and was more advanced considering his age than the other

children, and was relied upon by his parents as mature enough to take care of the younger children. He had nearly completed his second year of the commercial course at St. Thomas College, and had in his first year at the college received the highest marks of his class. He had worked as a bricklayer, and at the time of his death was working as a carpenter at a wage of $33 per week. He was an amateur boxer of such skill and strength that no one under 20 years of age could stay in the ring with him. He had fought in exhibition bouts, had never been whipped, and was ambitious to become a professional prize fighter.

R. L. Scott, a cousin and of approximately the same age as deceased, testified that the deceased was "a kind of leader among the boys; that he was a manly fellow," and that he (the witness) "looked up to deceased, who was more advanced and mature" than witness.

There is nothing in the evidence tending to show any negligence in the construction or maintenance of appellee's power lines or their supporting steel structures, called "towers," unless such negligence can be predicated upon the failure of the defendant to so inclose or guard the towers as to prevent access to them by minors, or to place warnings thereon of the danger inherent in high-power electric wires. So far as the evidence shows, these lines and steel supports were constructed and maintained in the usual and generally approved manner.

By the pleadings and evidence, plaintiffs' case is based solely upon the theory that the steel structures supporting the wires conveying the dangerous electric power were in their very nature so attractive to young children that their unguarded maintenance can be regarded as an invitation to plaintiffs' deceased son to climb upon the structure and expose himself to the danger which caused his death.

To agree with appellants in this contention would, upon the facts of this case, be an unreasonable and unwise extension of the doctrine of "attractive nuisance." While the evidence shows that appellee's lines ran across a tract of land in the city of Houston near a populated residential section of the city, and that children frequently played on this tract of land, and one witness testified he had sometimes seen children climb on the tower, there is no evidence that appellee knew that children ever climbed upon the tower, or any showing of facts from which such knowledge on the part of appellee could be reasonably inferred.

■ The questions of whether deceased was a trespasser or was guilty of contributory negligence are entirely separate questions and should not be confused in considering the law of this case. If he was on appellee's property without the express or implied in-

vitation of appellee, it cannot be held liable for his injury and death not willfully caused by it. Dobbins v. Ry. Co., 91 Tex. 60, 41 S. W. 62, 38 L. R. A. 573, 66 Am. St. Rep. 856; Denison Light & Power Co. v. Patton, 105 Tex. 621, 154 S. W. 540, 45 L. R. A. (N. S.) 303; City of Greenville v. Pitts, 102 Tex. 1, 107 S. W. 50, 14 L. R. A. (N. S.) 979, 132 Am. St. Rep. 843; Wimberly v. Gulf Production Co. (Tex. Civ. App.) 274 S. W. 986.

The purpose of the deceased in going upon the appellee's premises and the circumstances under which he received his fatal injury are thus detailed by plaintiffs' witness Roy Smith, who was with deceased when he was killed: "That day in the morning I went out where he was working. We left the house in the afternoon, me and him and his brother. We went from there to the filling station and he got some gas and his brother got off and went home. Doyle and I went to Sinclair refinery, we were just riding around. We did not stop when we got there. We turned and came back. We were just riding around. When we got on the road opposite where the towers were we stopped the car and got out. We were playing around, we stopped the car and picked some berries along there. We got out of the car to pick berries. We had no purpose of going over to the tower. * * * Before that time we had not discussed going up on that tower, we did not talk about it. He said he was going up on it. I did not tell him to stay off, I did not tell him anything, I told him I was going a little piece over there."

After stating that he got out of sight behind some bushes when deceased started to the tower and that he heard the explosion, this witness further testified: "That is the first thing that called it to my attention, and I glanced over and saw him falling. I knew what had happened to him. I thought he got hit by an electric wire. I realized it was electricity. With reference to whether I knew what that line was; I did not think about it. With reference to whether I knew that high line was carrying electricity; I thought it was, but it had that stuff around it and I did not think it would shock you. I saw that line way up there, it was about 60 feet off the ground. With reference to what made me think it was electricity when I looked over there; I knew it was nothing else. With reference to me knowing that electricity had caught him; I knew he got in touch with the wire."

Unless under the doctrine of "attractive nuisance," which was first applied by the courts of this state in what are known as the "turntable" cases, the appellee can be held to have impliedly invited the deceased to go upon its tower supporting its high-power electric wires, and thereby expose himself to the danger which caused his death, deceased must be regarded as a trespasser; the evidence show-

ing that he was not expressly or otherwise impliedly invited to go upon appellee's property. The extent of the doctrine of the "turntable" case was thus stated by this court in the case of Wimberly v. Gulf Production Company (Tex. Civ. App.) 274 S. W. 986, 987: The basis of the doctrine "is that the injured person is of such tender years that the 'attractive nuisance' would so appeal to his childish impulses as, in a sense, to constitute an invitation, and that such appeal should be foreseen, and care taken to prevent evil consequences."

In the Wimberly Case the deceased son, for whose loss by death the suit was brought by his parents, was killed by a gas explosion while bathing in a bathhouse kept upon its premises by the defendant for the use of its employees. The case turned upon the question of whether the deceased was a trespasser or an invitee upon the defendant's premises. The deceased was 18 years old. There was evidence showing that he and other minors about his age, and some younger, often used this bathhouse with the knowledge and acquiescence of the employees of the defendant. Upon this state of the evidence this court, in affirming the judgment of the lower court based upon an instructed verdict for the defendant, and refusing to apply the doctrine of attractive nuisance, used the language before quoted, and held that the deceased was not shown to have been within the class to which the attractive nuisance doctrine applies. We do not think the fact that the deceased in this case was a year and a half younger than the Wimberly boy differentiates the two cases.

■ We do not think reasonable minds can differ in the conclusion that a "bright, intelligent, and capable" youth, 16½ years old, who had excelled in his school work, was "a manly fellow" of man's stature, and had been and was at the time of his death doing a man's work and receiving a like compensation therefor, and whose judgment was so mature that he was looked up to as a leader by his associates, and relied upon by his parents to look after and protect his younger brothers from danger, is not within the class of children of tender years so immature in judgment, experience, and intelligence and so swayed by childish impulses as to be unable to resist the appealing attractiveness of appellee's steel towers.

Unless the appellee could have reasonably anticipated that a youth of the experience, intelligence, and character of the deceased would be so led by childish impulses as to

disregard the danger of climbing upon the tower and coming in contact with the electricity surging through the power wires carried thereon, it cannot be held guilty of negligence in leaving the tower unguarded and thereby giving the deceased an implied invitation to climb thereon.

■ We think the trial court correctly held as a matter of law that the facts of this case do not show such implied invitation, and that deceased at the time he received his injury was a trespasser upon appellee's premises, and appellee owed him no duty other than to refrain from intentionally injuring him.

These conclusions are supported by the cases before cited, and also by the following cases: Dudley & Orr v. Hawkins (Tex. Civ. App.) 183 S. W. 776; Central of Georgia Ry. Co. v. Robins, 209 Ala. 6, 95 So. 367, 36 A. L. R. 10; Louisville & N. Ry. Co. v. Hutton, 220 Ky. 277, 295 S. W. 175, 53 A. L. R. 1328.

It follows from the conclusions above expressed that the judgment of the trial court should be affirmed, and it has been so ordered.

Affirmed.

### On Motion for Rehearing.

Appellants' motion for rehearing calls our attention to an inaccurate statement in the fact findings contained in our original opinion.

The statement in our original opinion that "there is no evidence that appellee knew that children ever climbed upon the tower, or any showing of facts from which such knowledge on the part of appellee could be reasonably inferred," is not entirely accurate, in that there is evidence in the record, not called to our attention in appellants' brief, to the effect that, about a year before appellants' son received his fatal injuries, a boy about 15 years of age climbed upon one of appellee's towers near the one on which the Corder boy was injured and received an electric shock which knocked him off the tower and burned him severely. This boy testified that while he was in the hospital having his injuries treated he was called on by a young man who said he was a representative of the appellee company. He did not know this man and could not give his name.

We do not think this evidence materially changes the facts upon which our original opinion is based, and we adhere to the conclusions expressed in that opinion.

The motion for rehearing is refused.

Refused.