## TEXAS–LOUISIANA POWER CO. v. BIHL.

### No. 1729—6156.

Commission of. Appeals of Texas, Section A.

Dec. 30, 1933.

Hart Johnson, of Fort Stockton, and Leachman & Gardere, of Dallas, for plaintiff in error.

W. A. Hadden, of Fort Stockton, and Collins, Jackson & Snodgrass, of San Angelo, for defendant in error.

CRITZ, Judge.

This suit was filed in the district court of Pecos county, Tex., by Dan Bihl for himself and on behalf of his wife, against the Texas-Louisiana Power Company for damages on account of the death of their minor son, Eugene Bihl. Trial in the district court, where the case was submitted on special issues, resulted in a verdict and judgment for Bihl for $9,000. On appeal to the Court of Civil Appeals, this judgment was reversed, and the cause remanded for a new trial. 43 S.W.(2d) 294. Both parties applied to the Supreme Court for writ of error, and both applications were granted.

It appears from the record that the deceased, at the time of his death, was a bright boy about 11 years of age. On May 13, 1929, he climbed an electric light pole belonging to the power company, and on coming in contact with the electric wires carried near the top thereof was electrocuted. Such fact forms the basis of this suit.

There are several photographs of the pole involved in this suit contained in the statement of facts, and, as the pole itself, and its equipment, must constitute the basis of Bihl's recovery we deem it expedient to here reproduce one of the above-mentioned photographs:

Plaintiff's
Exhibit No. 1, H

Mr. and Mrs. Bihl lived in their own home in Fort Stockton, Tex., since 1913. They had been users of electricity since that date. The pole shown above was erected by the power company, at least with the implied consent of Bihl, in or near the corner of his yard. It was about a foot or a foot and a half from the sidewalk, and about the same distance from the street curb. It was an ordinary timber pole about six inches in diameter at the top, about twelve inches in diameter at the bottom, and about twenty feet high. It was like the ordinary timber poles used generally by electric light companies in this state and country. Also the power company had many such poles in use in Fort Stockton.

As shown by the above photograph, this pole had two cross-arms near the top. The upper arm carried the high-tension wires. The lower arm supported what is known as a transformer. This instrument is shown in the picture. It was a device used to reduce the 2300-volt current carried by the high-tension wires to what is known as a 110–220 circuit. The pole and its equipment was erected and used to run a three-wire electric service to Bihl's residence. Beginning near the top of the pole and running down its side was an insulated ground wire. This wire was attached to the pole by iron staples driven therein at intervals of about eighteen inches. The ground wire did not carry electric current, but was merely a protective device to dispose of the 2,300-volt current carried by the main wires in the event of a breakdown. This ground wire was attached at the bottom to an iron stake driven into the ground. It appears that the above-mentioned ground wire was very slack when it should have been tight against the pole. At places it formed loops or loose places which the deceased used in making his fatal climb by placing his feet or hands therein. At this point we call attention to the fact that we were unable to say from the record that the condition of the ground wire as shown in the picture is exactly the same as its condition when climbed by this boy, but we presume that there is little difference.

The record shows that just before this boy made his fatal climb he requested his sister to let him play jacks with her. The request was not granted because, as she stated, she thought the game too hard for him. A few minutes later the boy climbed the pole, with the fatal result already stated. Also, as already stated, we presume this boy made use of the loops or loose places in the ground wire to assist him in making his climb.

For further statement of the case we refer to the opinion of the Court of Civil Appeals.

■■ From what has been said, it is evident that Bihl's right to recover must depend on a holding that the pole and its equipment above shown constituted what is known in law as an attractive nuisance. Generally speaking, an attractive nuisance is a thing which may naturally be expected to allure young children upon private premises, or a thing which has an especial or unusual attraction for young children by reason of their childish instincts. 6 C. J. 819. In order for a thing to constitute an attractive nuisance, it must be so constructed or maintained as to constitute an implied invitation to young children. In other words, the thing or instrumentality must be such that on account of its nature, location, and surroundings it is especially and unusually calculated to attract and does attract young children. San Antonio & A. P. Ry. Co. v. Morgan, 92 Tex. 98, 46 S. W. 28; Simonton v. Citizens' E. L. & P. Co., 28 Tex. Civ. App. 374, 67 S. W. 530.

From the record before us it is clear that this boy was not a trespasser on the premises where the pole was located. Also the power company was not a trespasser in locating and maintaining the pole in Bihl's yard.

■ The power company contends that under the undisputed evidence the deceased was, as a matter of law, a trespasser when he climbed this pole without its permission. If this was true, Bihl cannot recover. The deceased certainly had no right to climb this pole, and was a trespasser when he attempted to do so, unless it can be said that on account of its nature, location, and surroundings it was so constructed and maintained that it was especially and unusually calculated to attract or impliedly invite children of tender age to climb it. We think the authorities of this state are against such a conclusion. San Antonio & A. P. Ry. Co. v. Morgan, supra; McCoy v. T. P. & L. Co. (Tex. Com. App.) 239 S. W. 1105; Simonton v. Citizens' E. L. & P. Co., supra.

■ In the Simonton Case, supra, the pole involved was located in a public street where children commonly congregated and played, and was similar in every respect to this one, except it had nails or spikes driven therein every twenty inches to aid in climbing it, while this pole only had the loose or looped ground wire which could be used for such purpose. The Court of Civil Appeals held, as a matter of law, that the pole in the Simonton Case was not an attractive nuisance. The Supreme Court refused a writ of error in that case. Also in the McCoy Case, supra, the holding in the Simonton Case was especially referred to and approved by this section of the Commission. In the Simonton Case the spikes driven into the pole afforded a convenient means or aid to climb it. In the present case the ground wire, at best, was a very inconvenient aid. If the pole in the Simonton Case was not an attractive nuisance, much less so is the pole in the present case. It is the overwhelming weight of authority that ordinary poles used by electric light, telephone, and telegraph companies are not attractive nuis

ances, and we are unable to conclude that the loose wire already described made this pole so unusually attractive and alluring to young boys to climb as to impliedly invite them to do so. This conclusion settles this case.

We recommend that the judgments of the trial court and Court of Civil Appeals be both reversed, and judgment here rendered for the power company.

CURETON, Chief Justice.

The judgments of the district court and Court of Civil Appeals are both reversed, and judgment rendered for the plaintiff in error, as recommended by the Commission of Appeals.