## MAYES et ux. v. WEST TEXAS UTILITIES CO.

### No. 2107.

Court of Civil Appeals of Texas. Eastland.

Feb. 21, 1941.

Rehearing Denied March 21, 1941.

to recover damages by reason of the death of their son, Troy Mayes, who was electrocuted while climbing a transmission tower owned by the defendant. The defendant answered by general denial, special pleas, etc., and the court submitted the case to the jury on plaintiffs' testimony. The jury's answers to the special issues were returned into court. Each party made motion for judgment on the verdict, and the defendant also moved for judgment notwithstanding the verdict. Said motions came on ·for hearing and the court was of the opinion that "the plaintiffs under ·no circumstances are entitled to a judgment, but that both the defendant's motion for a judgment on the verdict and its motion for judgment notwithstanding the verdict * * * should be sustained." Judgment was entered accordingly.

On November 23, 1939, Troy Mayes, a boy twelve years and four months of age, was electrocuted while climbing a transmission tower belonging to the defendant and situated on land owned in fee by the West Texas Utilities Company. The tower was 40 or 50 feet high, and was similar to those in common use by such companies. At the time of the accident the boy had climbed about 18 feet up the tower, at which point he came in contact with the hanging wire charged with electricity. At the time of the accident the boy was accompanied by his twin brother, Roy Mayes. The latter testified that before the accident he did not see the loose wire; that they were crossing the pasture and climbed the tower to locate themselves; that they had lost their bearings. The tower was about 2 miles east of the city of Abilene and situated in open pasture covered with mesquite timber. Roy testified that prior to that time he had never climbed the tower, played around the same, nor cut across the pasture, by or under the tower. The testimony does not disclose that any one else had theretofore climbed the tower, nor that the ground surrounding the base had been habitually used by children as a playground. The pictures of the tower found in the record disclose that rather large sharp or jagged rocks covered the base of the tower. The first spike by which the company's employees ascend the pole is about 6 or 7 feet above the ground.

As we interpret this record, the plaintiffs predicate liability primarily upon allegations that the tower in question constituted an attractive nuisance and as maintained amounted to an implied invitation to Troy

Scarborough, Yates & Scarborough, of Abilene, for appellants.

Wagstaff, Harwell, Douthit & Alvis, of Abilene, and Eskridge & Groce, of San Antonio, for appellee.

LESLIE, Chief Justice.

J. R. Mayes and wife instituted this suit against the West Texas Utilities Company

Mayes to climb upon it. On the other hand, the appellee denies the existence of any such attractive nuisance at the time of the accident, and contends that Troy Mayes was a trespasser on its property. If at the time of the accident the deceased boy was a trespasser under the circumstances, then other issues decided by the jury, being in conflict with each other, become immaterial, and the appellee would be entitled to a judgment.

Many issues were submitted to the jury, among them the twelfth and thirteenth, answered as indicated. Question 12 was:

"From a preponderance of the evidence do you find that defendant's tower from which Troy Mayes fell was so built, arranged and equipped as to be unusually attractive as a place to climb to a boy of the age of Troy Mayes? Answer yes or no.

"Answer No.

"If you have answered question No. 12, yes, and only in that event then answer

"Question No. 13: From a preponderance of the evidence do you find that Troy Mayes was caused to go upon defendant's tower by and as a result of the unusual attractiveness of the said tower on the occasion in question? Answer yes or no.

"Answer No."

While the jury gave these unqualified answers to said important questions, nevertheless our conclusions herein are based upon what we deem to be the conclusive nature of the testimony in the case. The entire testimony has been read and given most careful consideration and we are forced to the conclusion that, as a matter of law, no attractive nuisance was shown to exist.

■ Since the undisputed testimony shows that the deceased climbed upon the private property of the defendant without any invitation, express or implied, he was unquestionably a trespasser. As such, the defendant owed him no duty, except not to willfully injure him. There are neither pleadings nor testimony of any intentional injuries. Under such circumstances no liability existed on the part of the defendant, and the court correctly entered the judgment notwithstanding the verdict.

■ The law applicable to such facts is elementary. It is stated in 30 Tex.Jur., p. 857, sec. 174, as follows: " * * * the owner or occupant of real property is under no obligation to make it safe for the benefit of trespassers, intruders or mere licensees coming upon it without his invitation, express or implied."

■ As applied to a case based upon the theory of attractive nuisance an approved statement of the law in that respect is to be found in Texas Power & Light Co. v. Burt, Tex.Civ.App., 104 S.W.2d 941, 942, writ refused, in an opinion by Judge Alexander: "The doctrine of attractive nuisance, which holds the owner liable for injury to children who trespass on his property, applies only where such owner maintains an instrumentality or appliance that is *so unusually attractive* that it appeals to the childish impulses of children of tender age in such manner as in a sense to constitute an invitation to them to play thereon, and that such appeal, and the dangers incident thereto, should be foreseen and care taken to prevent the evil consequences." (Italics ours.)

As a case in point we cite Texas-Louisiana Power Co. v. Bihl, Tex.Com.App., 66 S.W.2d 672, 674, opinion by Judge Critz. It is there held that an ordinary pole used by electric light, telegraph and telephone companies was not an attractive nuisance. The pole in that case was but 20 feet high, and the transmission lines supported by it carried 2300 volts of current. As in the instant case, there was a loose or suspended wire. The transmission line itself was not the statutory 22 feet from the ground. In disposing of the case the Supreme Court said: "It is the overwhelming weight of authority that ordinary poles used by electric light, telephone, and telegraph companies are not attractive nuisances, and we are unable to conclude that the loose wire already described made this pole so unusually attractive and alluring to young boys to climb as to impliedly invite them to do so. This conclusion settles this case."

As applied to the instant case, the brother-in-law of deceased testified there was nothing unusually attractive about the tower on which the boy was electrocuted, that it was similar to those in use generally over the State. Taken as a whole, we find no testimony that the tower was in any respect "unusually attractive."

We take from Texas Power & Light Co. v. Burt, supra, this further pertinent holding: "In the case of Simonton v. Citizens' Electric Light & Power Co., 28 Tex.Civ. App. 374, 67 S.W. 530, the court held that an electric light pole, located in a public street where children commonly congregated and played, with spikes driven therein at convenient places for aiding in climbing the

pole, was as a matter of law not an attractive nuisance. The Supreme Court refused a writ of error in that case. In the case of Texas-Louisiana Power Company v. Bihl (Tex.Com.App.) 66 S.W.(2d) 672, in an opinion by Mr. Justice Critz, the court followed the holding made by the Court of Civil Appeals in the Simonton Case and held that an electric light pole erected on or near the premises of the father of the injured child, which pole had attached thereto a loose wire which could be used for climbing the pole, was as a matter of law not an attractive nuisance. The tower here under consideration does not appear to be any more attractive to young children than the ordinary electric light pole such as was under consideration in the cases above referred to."

To the same effect is the opinion in Corder v. Houston Lighting & Power Co., Tex. Civ.App., 38 S.W.2d 606, writ refused.

In the foregoing conclusions we think there is nothing out of line with the opinion in Quisenberry v. Gulf Prod. Co., Tex. Civ.App., 63 S.W.2d 248, 250. In that case we were dealing with a situation described as one in which "there was a strong likelihood of the accident" and where the "danger was one not ordinarily encountered," meaning, in substance, one unusually attractive.

In the instant case, as pointed out, there is no testimony that the tower was any more dangerous to the public, or attractive to children, than the tower in common use for such purposes throughout the State. The twin brother did not discover the hanging wire until he had climbed the tower, and the suspended wire would have injured no one who refrained from trespassing upon the tower. The evidence does not stamp the tower as an attractive nuisance.

▉ The appellants further insist that regardless of the fact that Troy Mayes might have been a trespasser when the accident occurred, still the defendant would be liable in that part of its equipment (suspended wire) came below a point 22 feet above the ground (as specified in Art. 1436, R.S. 1925), which fact alone, it is contended, rendered the defendant liable for the death of the child. That statute, in part, provides, "Such lines [power] shall be constructed upon suitable poles in the most approved manner and maintained at a height above the ground of at least twenty-two feet * * * as the exigencies of the case may require."

It is undisputed in the instant case that the transmission lines of the defendant were 40 or 50 feet above the ground, and that the suspended wire was no part "of such line." However, if it be regarded as a part of the equipment, we do not believe that the above statute requires that all pieces of its wires and lines carrying high voltage shall necessarily be not less than 22 feet above the ground. As plausibly argued by the appellee, transformers, stations, switches and other equipment involving the use of wire would then have to be erected upon platforms not less than 22 feet above the ground. Even distribution lines could not be connected to customers doing business on the ground. Obviously, the appellee's transmission lines were not less than 22 feet above the ground. We do not believe that the statute under consideration imposes liability merely upon the fact that a suspended wire reached within about 15 feet of the ground.

▉ However, if it be considered that the appellee violated some statutory duty, still the facts reflected by this record would create no cause of action in favor of the trespasser on private property. Our Supreme Court in Burnett v. Fort Worth Light & Power Co., 102 Tex. 31, 112 S.W. 1040, 1041, 19 L.R.A.,N.S., 504, held: "We fail to see how a trespasser acquires any right by reason of the negligence arising from the violation of an ordinance of a city or a statute, rather than from negligence at common law."

The opinion in the Burnett case was cited and quoted from extensively in the recent decision of our Supreme Court in the case of Texas-Louisiana Power Co. v. Webster, 127 Tex. 126, 91 S.W.2d 302, 305, where Judge Critz makes the following statement:

"* * * the general rule is that as regards the liability of the owner or occupant of land for damages arising out of his negligence to persons coming on such land, there is no distinction to be drawn between cases of common-law negligence and cases of statutory or per se negligence.

* * * * * *

"It is the general rule, as established by our decisions, that the owner or occupant of real property is under no obligation to make it safe for the benefit of trespassers, intruders, or mere licensees coming

upon it without his invitation, express or implied."

We are of the opinion that there is no merit in this last contention. As stated above, numerous issues were submitted to the jury. There were conflicts in the findings and it would be necessary to reverse and remand this case, were it not for the matters above discussed and conclusively established.

The judgment of the trial court notwithstanding the verdict is correct and is affirmed. It is so ordered.