WALDEN, JAMES H., Associate Judge.
Appellant, defendant below, appeals a judgment for $25,000.00 entered upon a jury verdict in a wrongful death action arising out of the following circumstances.
On June 24, 1961, plaintiff-appellee’s 14 year old son was found dead atop an electric pole maintained by appellant. His death resulted from electrocution.
The pole in question was located some 50 to 100 yards from a beach area on Lake Carroll frequented by area residents, including children. This beach area was apparently located on the site of a pavilion which burned some 4 or 5 months prior to the tragedy. The debris had been cleared by area residents and, as aforesaid, they continued use of the beach. The area immediately surrounding the pole was overgrown in high grass and was not, apparently, an integral part of the recreation area.
The pole extended 25 feet above the ground and was the last in a lateral line ' extending from a main line some two blocks distant. It was supported by a guy wire. The line terminating at the pole carried a primary voltage of 2400 volts. A transformer was located on the pole to reduce the primary voltage to secondary voltage. Certain of the wires above the transformer were not insulated.
The pavilion had been the only “customer” on the line and had, prior to its destruction by fire, been supplied secondary voltage on a service line extending from the pole. Apparently when the pavilion was gone, this service wire had been cut, de-energized, rolled and left atop the pole. The testimony of two witnesses who had been at or near the pole a week before the fatal incident conflicted as to whether the service line was hanging down to the ground. It must, of course, be assumed that it was.
As aforesaid, plaintiff’s 14year old son was discovered dead atop the pole. There were no witnesses to his death, or testimony as to how or why he climbed the pole, but the theory presumably accepted by the jury was that he’d climbed the pole by using the dangling and de-energized service wire and had been electrocuted by contact with the uninsulated wires above the transformer.
Plaintiff-appellee sued upon theories of negligence and attractive nuisance. The former was abandoned upon agreement and the trial was had upon a theory of attractive nuisance. Defendant-appellant’s preverdict motions to dismiss and for directed verdict and post-verdict motions were denied.
The basic question presented by this appeal is whether or not the power line pole under the mentioned circumstances constituted an attractive nuisance under the doctrine as understood and applied in Florida. We hold that it was not an attractive nuisance as a matter of law and reverse.
Florida is committed to the attractive nuisance doctrine. See Johnson v. Wood, 155 Fla. 753, 21 So.2d 353. The particulars of the doctrine are found in the Court’s charge given here at the plaintiff’s request:
“I charge you that the owner of any type of artificial condition maintained on premises is liable for bodily harm to young children who enter upon such premises if
“(a) the place where the condition is maintained is one upon which the owner knows or should know that children are likely to enter;
“(b) the condition which must be attractive, alluring or enticing to said children and is one which the owner knows or by exercise of reasonable care should know exists, and which they realize or should realize is involving an unreasonable risk of death or serious bodily harm to such children;
“(c) the children, because of their youth, do not discover the condition or *229 realize the risk involved in intermeddl-ing in it;
“(d) the condition was inherently dangerous and constituted a trap, in that it involved a hidden element of danger;
“(e) the utility of the owner of maintaining the condition is slight as compared to the risk to young children involved therein.
“So, if you find from the evidence that all of these elements have been established by the Plaintiff to your satisfaction, and by a fair preponderance of the evidence, and that Larry Lariscy, the deceased minor, was attracted by childish impulse or curiosity to meddle or play with the artificial condition, then your verdict should be for the plaintiff.”
Applying this yardstick to the facts in evidence, we simply note that this was not a case for the application of the doctrine because the proof fails as to each ingredient.
While there is no controlling precedent in Florida, the authorities elsewhere hold that an electric tower or pole does not constitute an attractive nuisance even though a means exist for a child to climb to the top. The case closest to the instant factual situation that has been brought to our attention is the case of Texas-Louisiana Power Co. v. Bihl, Tex.Com.App., 66 S.W.2d 672. There, an eleven year old boy was electrocuted at the top of a power line pole after climbing it by use of a loose ground wire which did not carry current. More exactly, it was there set forth:
“Mr. and Mrs. Bihl lived in their own home in Fort Stockton, Tex., since 1913. They had been users of electricity since that date. The pole shown above was erected by the power company, at least with the implied consent of Bihl, in or near the corner of his yard. It was about a foot or a foot and a half from tile sidewalk, and about the same distance from the street curb. It was an ordinary timber pole about six inches in diameter at the top, about twelve inches in diameter at the bottom, and about twenty feet high. It was like the ordinary timber poles used generally by electric light companies in this state and country. Also the power company had many such poles in use in Fort Stockton.
“As shown by the above photograph, this pole had two cross-arms near the top. The upper arm carried the high-tension wires. The lower arm supported what is known as a transformer. This instrument is shown in the picture. It was a device used to reduce the 2300-volt current carried by the high-tension wires to what is known as a 110-220 circuit. The pole and its equipment was erected and used to run a three-wire electric service to Bihl’s residence. Beginning near the top of the pole and running down its side was an insulated ground wire. This wire was attached to the pole by iron staples driven therein at intervals of about eighteen inches. The ground wire did not carry electric current, but was merely a protective device to dispose of the 2,300-volt current carried by the main wires in the event of a breakdown. This ground wire was attached at the bottom to an iron stake driven into the ground. It appears that the above-mentioned ground wire was very slack when it should have been tight against the pole. At places it formed loops or loose places which the deceased used in making his fatal climb by placing his feet or hands therein.
* * * * * *
“It is the overwhelming weight of authority that ordinary poles used by electric light, telephone, and telegraph companies are not attractive nuisances, and we are unable to conclude that the loose wire already described made this pole so unusually attractive and alluring to young boys to climb as to impliedly invite them to do so. This conclusion settles this case.”
*230 See also, Keep v. Otter Tail Power Co., 201 Minn. 475, 277 N.W. 213.
Appellant also suggests that the result should be reversed because the verdict could only be based on a wrongful pyramid of inferences. While impressed with the argument we do not deem it necessary to decide this facet of the case in view of our determination that the doctrine of attractive nuisance is inapplicable, this doctrine being the whole foundation for the case.
The judgment is reversed.
SMITH, C. J., and ALLEN, J., concur.